**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| LEJILEX; CRYPTO FREEDOM ALLIANCE OF TEXAS,<br><br>       Plaintiffs,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION; ERIC R. WERNER; GARY GENSLER; CAROLINE A. CRENSHAW; JAIME E. LIZARRAGA; HESTER M. PEIRCE; and MARK T. UYEDA, in their official capacities,<br><br>       Defendants. | C.A. No. 4:24-cv-00168-O |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................2

STANDARD OF REVIEW ..............................................................................................................4

ARGUMENT ................................................................................................................................4

I.      This Court lacks jurisdiction because sovereign immunity bars this lawsuit ...............................4

        A.      Plaintiffs do not identify any final agency action affecting them in a specific
                way that has caused them legal wrong.................................................................5

        B.      Plaintiffs challenge matters committed to agency discretion by law............................10

II.     This lawsuit does not present a justiciable case or controversy .................................................11

        A.      Plaintiffs' claims are not ripe.......................................................................................11

                1.   The issues presented are not fit for judicial decision.................................................12

                2.   Any cognizable hardship to plaintiffs from withholding judicial review
                     does not justify judicial intervention at this juncture................................................18

        B.      Plaintiffs lack standing ...................................................................................................19

III.    This lawsuit is an improper programmatic challenge....................................................................21

CONCLUSION.................................................................................................................................25

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alabama-Coushatta Tribe of Tex. v. United States,*
   757 F.3d 484 (5th Cir. 2014) ................................................................5, 6, 7, 8, 22

*Am. Fed'n of Gov't Emps. v. O'Connor,*
   747 F.2d 748 (D.C. Cir. 1984) ...................................................................................14

*AT&T Corp. v. FCC,*
   349 F.3d 692 (D.C. Cir. 2003) ...................................................................................19

*Aulenback, Inc. v. Fed. Highway Admin.,*
   103 F.3d 156 (D.C. Cir. 1997) ...................................................................................13

*Bear Creek Bible Church v. EEOC,*
   571 F. Supp. 3d 571 (N.D. Tex. 2021) ...........................................................9, 10, 21

*Bennett v. Spear,*
   520 U.S. 154 (1997) .....................................................................................................8

*Bostock v. Clayton Cnty.,*
   590 U.S. 644 (2020) .....................................................................................................9

*Braidwood Management, Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ............................................................................9, 20, 21

*Cadle Co. v. Whataburger of Alice, Inc.,*
   174 F.3d 599 (5th Cir. 1999) ......................................................................................24

*Calderon v. Ashmus,*
   523 U.S. 740 (1998) ...................................................................................................17

*Ciba-Geigy Corp. v. EPA, as amended* (Sept. 9, 1986),
   801 F.2d 430 (D.C. Cir. 1986) ...................................................................................13

*City of Oakland v. Holder,*
   901 F. Supp. 2d 1188 (N.D. Cal. 2013) .......................................................................7

*City of Oakland v. Lynch,*
   798 F.3d 1159 (9th Cir. 2015) .....................................................................................7

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ...................................................................................................20

*Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.,*
   53 F.4th 361 (5th Cir. 2022) ........................................................................................4

*Cornerstone Christian Schs. v. Univ. Interscholastic League,*
   563 F.3d 127 (5th Cir. 2009) ......................................................................................11

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ............................................................................... 20

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
   960 F.3d 253 (5th Cir. 2020) ................................................................................. 2

*Danos v. Jones*,
   652 F.3d 577 (5th Cir. 2011) ................................................................................. 5

*DM Arbor Ct., Ltd. v. City of Houston*,
   988 F.3d 215 (5th Cir. 2021) ............................................................................... 14

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*,
   855 F.3d 681 (5th Cir. 2017) ................................................................................. 4

*Energy Transfer Partners, L.P. v. FERC*,
   567 F.3d 134 (5th Cir. 2009) ............................................................................... 17

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ............................................................................................... 5

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) .................................................................................. 8, 17, 19

*Gabelli v. SEC*,
   568 U.S. 442 (2013) ............................................................................................... 2

*Gentile v. SEC*,
   974 F.3d 311 (3d Cir. 2020) ............................................................................ 2, 10

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ............................................................................... 17

*Gulf Restoration Network v. McCarthy*,
   783 F.3d 227 (5th Cir. 2015) ............................................................................... 10

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .......................................................................................... 2, 10

*Hodl L., PLLC v. SEC*,
   No. 3:22-cv-1832, 2023 WL 4852322 (S.D. Cal. July 28, 2023) .................... 13, 20

*Hodl L., PLLC v. SEC*,
   No. 23-55810 (*appeal pending* 9th Cir. 2023) ................................................... 13

*Hosein v. Gonzales*,
   452 F.3d 401 (5th Cir. 2006) ............................................................................... 12

*In re B-727 Aircraft Serial No. 21010*,
   272 F.3d 264 (5th Cir. 2001) ................................................................................. 6

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,*
   919 F.3d 638 (1st Cir. 2019) ...........................................................................24

*Kokesh v. SEC,*
   581 U.S. 455 (2017) .............................................................................................2

*Louisiana v. United States,*
   948 F.3d 317 (5th Cir. 2020)........................................................................6, 22

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) .....................................................................7, 21, 22, 23

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ..........................................................................................19

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) ................................................................................... 14, 18

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) .........................................................................11, 18, 19

*Orix Credit All., Inc. v. Wolfe,*
   212 F.3d 891 (5th Cir. 2000).......................................................... 12, 13, 14

*Physician Hosps. of Am. v. Sebelius,*
   691 F.3d 649 (5th Cir. 2012)............................................................................4

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,*
   344 U.S. 237 (1952) .................................................................................. 17, 24

*Rivera v. Wyeth-Ayerst Lab'ys,*
   283 F.3d 315 (5th Cir. 2002)..........................................................................20

*Sample v. Morrison,*
   406 F.3d 310 (5th Cir. 2005)..........................................................................11

*SEC v. Citigroup Glob. Mkts., Inc.,*
   752 F.3d 285 (2d Cir. 2014) .....................................................................2, 10

*SEC v. Coinbase, Inc.,*
   No. 1:23-cv-04738 (*complaint filed* S.D.N.Y. June 6, 2023)....................16

*SEC v. Collyard,*
   861 F.3d 760 (8th Cir. 2017)..........................................................................16

*SEC v. Payward, Inc.,*
   No. 3:23-cv-06003 (*complaint filed* N.D. Cal. Nov. 20, 2023)...............16

*SEC v. W.J. Howey Co.,*
   328 U.S. 293 (1946) .........................................................................................15

*Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*,
   968 F.3d 419 (5th Cir. 2020)................................................................................20

*Sierra Club v. Peterson*,
   228 F.3d 559 (5th Cir. 2000)....................................................................8, 21, 22

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) ..................................................................................................5

*St. Tammany Par. ex rel. Davis v. FEMA*,
   556 F.3d 307 (5th Cir. 2009).................................................................................4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).................................................................................................20

*Teva Pharms. USA, Inc. v. Sebelius*,
   595 F.3d 1303 (D.C. Cir. 2010)...........................................................................21

*Texas v. EEOC*,
   933 F.3d 433 (5th Cir. 2019)..........................................................................7, 10

*Texas v. United States*,
   497 F.3d 491 (5th Cir. 2007).........................................................................11, 19

*Texas v. United States*,
   523 U.S. 296 (1998).................................................................................................13

*TOTAL Gas & Power N. Am., Inc. v. FERC, as revised* (July 10, 2017),
   859 F.3d 325 (5th Cir. 2017)....................................................................11-12, 19

*United States v. Ream*,
   491 F.2d 1243 (5th Cir. 1974) .............................................................................11

*Veldhoen v. U.S. Coast Guard*,
   35 F.3d 222 (5th Cir. 1994)....................................................................................8

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA*,
   751 F.2d 721 (5th Cir. 1985)...............................................................................24

*Walmart Inc. v. DOJ*,
   21 F.4th 300 (5th Cir. 2021) .......................................... 6, 7, 8, 10, 12, 17, 19, 22

*Walmart Inc. v. DOJ*,
   517 F. Supp. 3d 637 (E.D. Tex. 2021) .............................................................10

*Webster v. Doe*,
   486 U.S. 592 (1988)................................................................................................10

**Statutes**

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*

    5 U.S.C. § 551(4) ................................................................................................................... 6

    5 U.S.C. § 551(6) ................................................................................................................... 6

    5 U.S.C. § 551(7) ................................................................................................................... 6

    5 U.S.C. § 551(8) ................................................................................................................... 6

    5 U.S.C. § 551(10) ................................................................................................................. 6

    5 U.S.C. § 551(11) ................................................................................................................. 6

    5 U.S.C. § 551(13) ............................................................................................................. 6, 8

    5 U.S.C. § 701(a)(2) .......................................................................................................... 5, 10

    5 U.S.C. § 702 ............................................................................................. 5, 6, 7, 8, 9, 10, 11, 22

Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*

    Section 20(a), 15 U.S.C. § 77t(a) ........................................................................................ 10

    Section 20(b), 15 U.S.C. § 77t(b) .................................................................................... 2, 10

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

    Section 3(a)(1), 15 U.S.C. § 78c(a)(1) ................................................................................ 15

    Section 3(a)(4), 15 U.S.C. § 78c(a)(4)(A) ........................................................................... 15

    Section 3(a)(23)(A), 15 U.S.C. § 78c(a)(23)(A) ................................................................. 16

    Section 21(a), 15 U.S.C. § 78u(a) ....................................................................................... 10

    Section 21(d), 15 U.S.C. § 78u(d) .................................................................................... 2, 10

Declaratory Judgment Act, 28 U.S.C. § 2201 ....................................................... 3, 5, 6, 12

**Rules and Regulations**

17 C.F.R. § 202.5(b) ................................................................................................................ 2

17 C.F.R. § 240.3b-16(a) ....................................................................................................... 15

Federal Rule of Civil Procedure 12(b)(1) ........................................................................ 1, 4

**Other**

*IMVU, Inc.,*
    SEC Staff No-Action Letter, 2020 WL 12949519 (Nov. 19, 2020) .................................... 15

*Pocketful of Quarters, Inc.,*
    SEC Staff No-Action Letter, 2019 WL 8128104 (July 25, 2019) ....................................... 15

*Turnkey Jet, Inc.,*
    SEC Staff No-Action Letter, 2019 WL 1554004 (Apr. 3, 2019).........................................................15

U.S. Const. art. III .........................................................................................2, 4, 11, 12, 14, 19, 20, 21, 23

The defendants in this action—the Securities and Exchange Commission, as well as its five Commissioners and the Regional Director of its Fort Worth Regional Office in their official capacities—move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## INTRODUCTION

LEJILEX, a company that "wishes" to launch a trading platform for digital assets, and the Crypto Freedom Alliance of Texas (CFAT), whose members include LEJILEX, ask this Court to block the Commission from bringing enforcement actions regarding digital assets, but their complaint is fatally premature.  They do not challenge any Commission rule, order, or other action.  Instead, under the banner of a request for declaratory relief, plaintiffs ask this Court to issue an advisory opinion that would bless LEJILEX's proposed business, declare that a "wildly diverse" universe of digital assets are not securities, and enjoin the Commission from bringing enforcement actions against potential would-be defendants that would have the opportunity to defend against those actions if and when they are filed.

This request for far-reaching relief should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  First, sovereign immunity bars this action because plaintiffs have not identified any final agency action that would waive sovereign immunity under the Administrative Procedure Act (APA).  Second, ripeness and standing requirements preclude this Court from exercising jurisdiction consistent with the Constitution.  Finally, plaintiffs' complaint, which seeks to place the "digital asset industry" beyond the reach of the federal securities laws, constitutes an improper programmatic challenge, which this Court lacks jurisdiction to adjudicate.

The Court should reject the complaint for what it is on its face.  It is a nonjusticiable request that this Court immunize a business that may never operate in the way it wishes from an enforcement action that may never occur.  It is an impracticable effort to obtain a judicial determination, in the abstract, that digital assets—ranging from those currently being litigated in

1

other courts to those that do not even yet exist—cannot be securities.  And it is an inappropriate attempt to push the judiciary far beyond Article III by asking this Court to "free" plaintiffs and "the rest of the digital asset industry" from the federal securities laws for all time.

## BACKGROUND

The complaint consists mostly of legal conclusions regarding digital assets generally and the Commission's enforcement program, and it includes only a few paragraphs about plaintiffs.  For purposes of this motion, this Court accepts the complaint's factual allegations as true but need not accept its legal conclusions.  *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020).

Congress "established the Securities and Exchange Commission * * * to enforce federal securities laws."  *Kokesh v. SEC*, 581 U.S. 455, 458 (2017).  When the Commission learns of a potential violation, the "agency's decision on whether to investigate is a matter committed to agency discretion by law."  *Gentile v. SEC*, 974 F.3d 311, 319 (3d Cir. 2020); *see Gabelli v. SEC*, 568 U.S. 442, 451 (2013) ("[A] central mission of the Commission is to investigate potential violations of the federal securities laws.") (cleaned up).  Following an investigation, the Commission may initiate an enforcement action in federal court by filing a complaint that asks the court to grant relief for a violation of the federal securities laws.  *See, e.g.*, 15 U.S.C. §§ 77t(b), 78u(d) (authorizing enforcement actions).  As with investigations, Congress entrusted the decision of how to enforce the federal securities laws to the Commission's "absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 297 (2d Cir. 2014) ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C."); *see* 15 U.S.C. §§ 77t(b), 78u(d); 17 C.F.R. § 202.5(b).

Plaintiffs allege that LEJILEX "is developing" "a novel digital asset [trading] platform called the Legit.Exchange * * * that allows users to trade digital assets with each other."  Compl. ¶¶ 10, 58. The terms "digital asset" and "crypto asset" refer to assets that are issued and/or transferred using

distributed ledger or blockchain technology, such as cryptocurrencies and tokens.  *Id.* ¶ 32.

According to the complaint, LEJILEX "wishes to launch" this platform at some future date and

plans to permit the trading of digital assets, including those that the Commission has elsewhere

alleged are securities.  *Id.* ¶¶ 5, 61.  Plaintiffs allege that LEJILEX "does not intend to register as a

securities exchange, broker, or clearing agency with the SEC," and "will not be registering its

platform with the SEC."  *Id.* ¶¶ 61, 88.  Plaintiffs allege that LEJILEX is a member of CFAT, "a

non-profit membership organization" that "advocates for the responsible development of digital

asset policies in Texas to foster innovation and economic growth while protecting consumers."  *Id.* ¶

11.  The complaint does not identify any other CFAT members.

LEJILEX and CFAT filed this lawsuit "to prevent the SEC from subjecting LEJILEX and

CFAT's members to * * * enforcement actions."  *Id.* ¶ 93.  The complaint invokes the Declaratory

Judgment Act (DJA), 28 U.S.C. § 2201, based on a supposed "genuine threat" of a Commission

enforcement action against LEJILEX.  *Id.* ¶¶ 86-88.  But the complaint does not allege that the

Commission has threatened to bring an enforcement action against LEJILEX.  Indeed, the

complaint does not allege any Commission conduct related to LEJILEX—no correspondence, no

calls with staff, no investigation—or even that the Commission was aware of LEJILEX prior to the

filing of this lawsuit.  Rather, the complaint premises this "genuine threat" on "the SEC's history of

bringing enforcement actions against other digital-asset trading platforms engaged in the same

conduct" and cites three Commission enforcement actions against existing digital-asset trading

platforms.  *Id.* ¶ 88; *see id.* ¶¶ 52, 57 (citing enforcement actions related to the Binance, Coinbase, and

Kraken trading platforms).  The complaint also alleges that "CFAT is harmed by [the] threat" of its

members potentially facing Commission enforcement actions, but does not specify which members

or detail their operations or interactions, if any, with the Commission.  *Id.* ¶ 89.

Plaintiffs seek wide-ranging declaratory and injunctive relief.  They ask this Court to "[d]eclare that secondary-market sales of digital assets like the ones that LEJILEX intends to facilitate through the Legit.Exchange are not sales of securities" as defined by the federal securities laws.  *Id.* ¶ 94.  And they ask this Court to declare that LEJILEX—should it commence operations—would not be an unregistered securities exchange, broker, or clearing agency under the Securities Exchange Act of 1934.  *Id.*  Finally, they ask this Court to "[e]njoin the SEC from bringing an enforcement action against LEJILEX or similarly situated CFAT members premised on any purported failure to register as securities exchanges, brokers, or clearing agencies."  *Id.*

## STANDARD OF REVIEW

Defendants move to dismiss for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).[1]  "The burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022) (cleaned up).  "[A]t the Rule 12(b)(1) stage of the proceedings, the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction."  *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

## ARGUMENT

Three jurisdictional defects doom plaintiffs' complaint: (1) there is no waiver of sovereign immunity; (2) there is no case or controversy under Article III due to the prematurity of this suit; and (3) the complaint raises an improper programmatic challenge.  Each of these jurisdictional failures is fatal to plaintiffs' complaint and requires dismissal.

**I.      This Court lacks jurisdiction because sovereign immunity bars this lawsuit.**

Plaintiffs fail to carry their burden of showing "Congress's unequivocal waiver of sovereign immunity."  *St. Tammany Par. ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).  "[T]he

---

[1] By filing this motion, defendants do not waive and reserve all defenses.  *See Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017).

United States may not be sued except to the extent that it has consented to suit by statute," and where there is no consent or waiver, "the court lacks jurisdiction." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (cleaned up); *accord FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011) (holding that sovereign immunity extends to claims against United States officers sued in their official capacities).

Although plaintiffs do not allege an APA cause of action, they invoke Section 702 of the APA (Compl. ¶ 92), which waives sovereign immunity for actions seeking nonmonetary relief brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  But Section 702 does not waive sovereign immunity here because plaintiffs have not identified a final agency action that caused them legal wrong. *Alabama-Coushatta*, 757 F.3d at 489.  Moreover, even if plaintiffs could identify such a final agency action, the waiver would not apply because they challenge hypothetical future investigatory and prosecutorial decisions by the Commission, which are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and are not reviewable.

> **A.      Plaintiffs do not identify any final agency action affecting them in a specific way that has caused them legal wrong.**

Plaintiffs fail to establish the "two separate requirements for establishing a waiver of sovereign immunity" under Section 702. *Alabama-Coushatta*, 757 F.3d at 489.  Plaintiffs must "identify some agency action affecting [them] in a specific way" and must show that they "suffered legal wrong because of the challenged agency action."  *Id.* (cleaned up).[2]  Their complaint satisfies neither requirement.

---

[2] The complaint's lone cause of action invokes only the DJA and no other statute, leaving the APA as the only possible means by which plaintiffs could invoke a waiver of sovereign immunity.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (describing the DJA as "procedural

1. Because the complaint "fails to point to any identifiable 'agency action' within the meaning of § 702," plaintiffs have not alleged "that subject-matter jurisdiction exists for this lawsuit." *Alabama-Coushatta*, 757 F.3d at 490. "'[A]gency action' for the purposes of Section 702 is set forth by 5 U.S.C. § 551(13) and is defined as 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Id.* at 489, quoting 5 U.S.C. § 551(13); *see also Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020) (stating that "agency action" is "a term of art that does not include all conduct") (cleaned up). Plaintiffs do not identify anything included in Section 551(13) that has affected them, such as a "rule," "license," "sanction," or "relief." *See* 5 U.S.C. § 551(4), (8), (10), (11) (defining those terms for APA purposes); *Walmart Inc. v. DOJ*, 21 F.4th 300, 308-311 (5th Cir. 2021) (discussing meaning of "rule" and "sanction"). They do not allege that the Commission has adopted a "rule" that aggrieves LEJILEX, engaged in an "adjudication"—the "agency process for the formulation of an order," 5 U.S.C. § 551(7)— regarding LEJILEX, or entered an "order" making a final disposition related to LEJILEX. *See* 5 U.S.C. § 551(6) ("'[O]rder' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing.").

Instead, plaintiffs claim an "agency action" based on a supposed "threat" of future enforcement action. *E.g.*, Compl. ¶ 88 ("LEJILEX faces a genuine threat that the SEC will bring an enforcement suit against it if LEJILEX engages in its intended course of conduct."). Plaintiffs, however, do not allege any basis for that supposed threat or claim that the Commission has threatened LEJILEX. And even in instances where there has been the type of explicit threat of future enforcement that is lacking here, the Fifth Circuit has held that it does not qualify as agency

only" because it "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction") (cleaned up); *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001) (holding that the DJA does not provide an independent cause of action).

6

action for purposes of Section 702. *Walmart*, 21 F.4th at 310-11. The agency-action requirement cannot be satisfied with mere conjecture regarding what the Commission might someday do when acting in its enforcement capacity.

Rather than identify any threat directed towards them, plaintiffs premise their suit on "enforcement actions that the SEC has brought against [purportedly] comparable digital asset trading platforms." Compl. ¶ 5; *see id.* ¶¶ 52-57. But civil actions against other entities do not constitute agency action *against LEJILEX.* "Agencies make rules when they announce principles of general applicability and future effect," but allegations in a complaint are not rules because a "complaint does not create rights or obligations, nor does it have future effect." *Walmart*, 21 F.4th at 308-09 (cleaned up). A civil action brought by a federal agency is a request that a district court exercise its jurisdiction to adjudicate liability for an alleged violation of the law and grant the requested relief, but it is not a self-executing action by the agency. *See, e.g.*, *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195-96 (N.D. Cal. 2013) ("[T]he filing of the * * * complaint simply initiates a judicial process expressly authorized by statute and requires the Government to carry its burden of establishing that the defendant property [violated the law]."), *aff'd sub nom. City of Oakland v. Lynch*, 798 F.3d 1159 (9th Cir. 2015). And even if the Commission's allegations against other entities somehow constituted agency action, they do not "affect[] [LEJILEX] in a specific way," as is required to invoke Section 702's sovereign-immunity waiver. *Alabama-Coushatta*, 757 F.3d at 489; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (observing that for purposes of Section 702, the agency action must "affect[] [the plaintiff] in the specified fashion").

Moreover, because, at most, plaintiffs seek judicial review "pursuant only to the general provisions of the APA * * * [t]here must be 'final agency action'" in order for this Court to exercise jurisdiction. *Alabama-Coushatta*, 757 F.3d at 489, citing *Lujan*, 497 U.S. at 882; *see Texas v. EEOC*, 933 F.3d 433, 440 n.8 (5th Cir. 2019) ("In this circuit, whether an agency action is final is a

jurisdictional issue.").  "Final agency actions are actions which (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc), quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  The filing of a complaint in federal court against a third party does not constitute a final agency action.  Indeed, even for adjudications before Article I tribunals, the issuance of an administrative complaint is "not 'final agency action'" because it represents only "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings."  *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-41 (1980).[3] Moreover, even had plaintiffs alleged that the Commission is investigating LEJILEX, which they have not, the Fifth Circuit has held that "[a]n agency's initiation of an investigation does not constitute final agency action."  *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

2.  Even assuming that the complaint sufficiently alleges final agency action, plaintiffs fail to meet the second requirement for waiving sovereign immunity because they cannot show that they "suffered legal wrong" on account of that agency action.  *Walmart*, 21 F.4th at 308; *Alabama-Coushatta*, 757 F.3d at 489.  Plaintiffs do not refer to a statutory provision that they claim the Commission violated by bringing those enforcement actions—or any other supposed legal violation by the Commission (*e.g.*, *ultra vires* conduct).  Rather, they disagree with interpretations of the federal securities laws advanced by the Commission in those enforcement actions—allegations that the courts hearing those actions will resolve with regard to those particular defendants.  *See, e.g.*, Compl.

---

[3] Neither the definition of "agency action" in 5 U.S.C. § 551(13) nor caselaw supports the notion that the filing of an agency enforcement action against a defendant in federal court would allow that defendant to sue the agency in a separate declaratory judgment action that seeks to enjoin the enforcement action.  *See supra* 6; *Walmart*, 21 F.4th at 311 (concluding that "the pendency of an enforcement action against [the plaintiff in a different court] on theories of liability similar to those [the plaintiff] challenges here * * * demonstrates that this [declaratory judgment] action is not fit for judicial decision").  But in any event, this Court need not reach that issue because plaintiffs invoke Section 702 based on only a supposed "threat of enforcement."  Compl. ¶ 92.

¶¶ 64-84.  But those other suits do not cause "legal wrong" to plaintiffs.  At most, *a court* may impose relief that creates consequences and obligations *for another party,* but such judgments, entered by a different court, will not result in plaintiffs suffering legal wrong within the meaning of Section 702.

This Court's decision in *Bear Creek Bible Church v. EEOC*, which the complaint cites (¶ 91), is not to the contrary.  571 F. Supp. 3d 571 (N.D. Tex. 2021), *aff'd in part, vacated in part, rev'd in part sub nom. Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023).  The context for *Bear Creek* was a Supreme Court decision holding that Title VII protects employees from termination based on sexual orientation or transgender status but declining to address the scope of Title VII's religious-liberty exception.  *Id.* at 586, citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 680-82 (2020).  The *Bear Creek* plaintiffs, who sought to maintain employment policies the EEOC prohibited, invoked the exemption and asserted claims for declaratory judgment under the First Amendment, the Religious Freedom Restoration Act, and Title VII.  *Id.*  They challenged the agency's interpretation of Title VII and its exemption, as reflected in formal EEOC guidance and an enforcement action against a third party.  *Id.* at 596, 599.  This Court found that the EEOC guidance and the related enforcement action constituted agency action for purposes of Section 702.  *Id.* at 599.

This matter differs in three key respects.  First, because the *Bear Creek* plaintiffs asserted "causes of action that arise outside of the APA," namely claims under the First Amendment and Title VII, they were not required to show "final agency action," and this Court did not address the issue.  *Id.* (cleaned up).  By contrast, because here plaintiffs invoke only the APA, they must "establish 'final agency action' for the Section 702 waiver to apply" and they have failed to do so. *Id.*; *see* Compl. ¶¶ 86, 92; *supra* 5 n.2.  Second, in *Bear Creek* it was undisputed that the plaintiffs' specific employment "policies [had] *already* run afoul of the EEOC [g]uidance" that they claimed violated their constitutional rights.  571 F. Supp. 3d at 596, 599.  But in this case, the Commission

has not determined that LEJILEX has run afoul of guidance equivalent to the EEOC's "substantive rule[s]," *Texas*, 933 F.3d at 450-51, or that LEJILEX has violated the federal securities laws.   And third, unlike in *Bear Creek*, here plaintiffs seek "wholesale review" of the Commission's "enforcement practices" as to digital assets, and "Section 702 does not waive the government's sovereign immunity for such a sweeping challenge." *Walmart Inc. v. DOJ*, 517 F. Supp. 3d 637, 655 (E.D. Tex.), *aff'd*, 21 F.4th 300 (5th Cir. 2021); *see infra* 21-25.

### B.   Plaintiffs challenge matters committed to agency discretion by law.

Even if plaintiffs' allegations about actions against other parties somehow implicated final agency action affecting plaintiffs within the meaning of the APA, the APA's exception for actions "committed to agency discretion" would bar their reliance on Section 702's sovereign-immunity waiver.  5 U.S.C. § 701(a)(2) ("This chapter applies, according to the provisions thereof, except to the extent that * * * agency action is committed to agency discretion by law.").  The waiver "is not absolute, and Congress has provided that [it] does not apply [if the challenged] 'agency action is committed to agency discretion by law.'" *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 232-33 (5th Cir. 2015), quoting 5 U.S.C. § 701(a)(2); *see Webster v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702 * * * is predicated on satisfying the requirements of § 701 * * * .").

Plaintiffs seek to prevent the Commission from bringing enforcement actions.  *See, e.g.*, Compl. ¶ 93.  But the decisions whether to investigate and whether to bring enforcement actions, which implicate the Commission's consideration of its priorities and resource allocation, are committed to the Commission's discretion by law.  *See, e.g.*, 15 U.S.C. §§ 77t(a), (b), 78u(a), (d). Indeed, such "exercise of prosecutorial discretion" is the paradigmatic example of agency action committed to agency discretion by law.  *Heckler*, 470 U.S. at 828-34 (cleaned up); *Gentile*, 974 F.3d at 319 (holding that the Commission's "decision on whether to investigate is a matter committed to agency discretion by law."); *Citigroup*, 752 F.3d at 297 ("The exclusive right to choose which charges

to levy against a defendant rests with the S.E.C."). "This discretion flows not from a desire to give carte blanche to law enforcement officials but from recognition of the constitutional principle of separation of powers." *United States v. Ream*, 491 F.2d 1243, 1246 n.2 (5th Cir. 1974). Because the decisions whether to investigate and whether to bring enforcement actions are committed to the Commission's discretion by law, Section 702 is inapplicable and this Court lacks jurisdiction.

## II. This lawsuit does not present a justiciable case or controversy.

Article III's "Cases" and "Controversies" limitation presents another barrier to subject-matter jurisdiction. U.S. Const. art. III, § 2. In interpreting Article III, "courts have developed justiciability doctrines, such as the standing and ripeness doctrines." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). Though "the doctrines often overlap in practice," "standing is concerned with whether a proper party is bringing suit, while ripeness is concerned with whether the suit is being brought at the proper time." *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007). "[S]tanding and ripeness are essential components of federal subject-matter jurisdiction * * * ." *Sample*, 406 F.3d at 312. To adequately plead subject-matter jurisdiction, plaintiffs must allege facts demonstrating standing and ripeness. *See, e.g.*, *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133-34 (5th Cir. 2009). Here, plaintiffs fail to sufficiently allege either.

### A. Plaintiffs' claims are not ripe.

Plaintiffs cannot show ripeness because they ask this Court to embroil itself in a request for declaratory and injunctive relief against hypothetical future Commission enforcement actions. "[T]he ripeness requirement is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements * * * and also to protect the agencies from judicial interference * * * ." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (cleaned up). "A declaratory judgment action, like any other action, must be ripe in order to be justiciable," *TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 332 (5th Cir. 2017), *as*

11

*revised* (July 10, 2017) (cleaned up),  and it "is ripe * * * only where an actual controversy exists,"

meaning that "a substantial controversy of sufficient immediacy and reality exists between parties

having adverse legal interests," *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000)

(cleaned up).  *See Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (per curiam) (interpreting the

DJA's "'case of actual controversy' requirement to be coterminous with Article III's 'case or

controversy' requirement").  "Ripeness is a twofold inquiry that requires courts to evaluate both the

fitness of the issues for judicial decision and the hardship to the parties of withholding court

consideration." *Walmart*, 21 F.4th at 311 (cleaned up).  Here, the issues presented are unfit for

judicial decision, and the cognizable hardship to plaintiffs, if any, does not justify judicial

intervention at this juncture.

### 1.    The issues presented are not fit for judicial decision.

At this "pre-enforcement * * * action" stage, the issues are not fit for review when

considering "whether the agency's action is sufficiently final" and "the likelihood that threatened

litigation will occur," as well as "whether [judicial review] of [the] issue[s] would benefit from a more

concrete setting" and "whether the issue[s] presented [are] purely legal one[s]." *Walmart*, 21 F.4th at

311 (cleaned up).  While "[f]ailure on even one of [these] prongs can render a case unfit for judicial

review," *id.*, here all of the considerations demonstrate a lack of fitness for review.

1. Plaintiffs' request for judicial intervention is premature because the Commission has

taken no action regarding LEJILEX and plaintiffs offer only speculation as to the filing of a

potential future Commission enforcement action.  As an initial matter, plaintiffs premise their

complaint not on any agency action—much less sufficiently final agency action—against LEJILEX,

but rather on the notion that because the Commission has brought enforcement actions against

other entities operating in the digital-asset space, the Commission may file an action against

LEJILEX.  *See supra* 3.  Where a lawsuit challenges agency action that is not sufficiently final,

"[j]udicial review * * * improperly intrudes into the agency's decisionmaking process" and also "squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986), *as amended* (Sept. 9, 1986). Here, the Commission has not taken any action with respect to LEJILEX, much less "provided its final word on the matter short of an enforcement action." *Id.* at 437 (cleaned up); *see Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 167 (D.C. Cir. 1997) ("Even where the issue presented is a purely legal one and presumptively fit for review, * * * such an issue may be deemed unfit for review if * * * further administrative action is needed to clarify the agency's position.") (cleaned up); *see also supra* 3. It remains uncertain the extent to which LEJILEX will operate as it wishes and how the Commission would respond, if at all. Thus, present judicial review would "disrupt the orderly process of administrative decisionmaking." *Ciba-Geigy Corp.*, 801 F.2d at 437; *see, e.g., Hodl L., PLLC v. SEC*, No. 3:22-cv-1832, 2023 WL 4852322, at *4 (S.D. Cal. July 28, 2023) (holding that digital-asset-related declaratory judgment claims were not ripe because the Commission had not brought suit against the plaintiff), *appeal pending* (9th Cir. No. 23-55810).

Moreover, "in determining whether a justiciable controversy exists" regarding the filing of a lawsuit that "is contingent upon certain factors," a court "must take into account the likelihood that these contingencies will occur." *Orix*, 212 F.3d at 897; *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up). Here, LEJILEX's allegations center on future conduct: it is "developing" a new trading platform that "will allow" trading of digital assets, Compl. ¶¶ 58, 88, but it does not allege that its planned platform is operational, that it currently allows trading of digital assets that the Commission has elsewhere alleged are securities, or that the Commission has turned its attention to LEJILEX in any way. Given the infancy of the business, and the absence of any allegation that the Commission has engaged with LEJILEX,

plaintiffs fail to show that a Commission action *against LEJILEX* "is sufficiently likely to happen to justify judicial intervention." *Orix*, 212 F.3d at 897 (cleaned up),

2. In addition to its prematurity, the judicial review sought by plaintiffs is unwarranted because it would require adjudication based on facts that do not yet exist. "Courts customarily deal in specific facts or circumstances drawn with some precision and legal questions trimmed to fit those facts or circumstances; they are not in the business of deciding the general without reference to the specific." *Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748, 755-56 (D.C. Cir. 1984). Thus, reflecting both "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction," "[a] case becomes ripe when it would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (cleaned up). That is true even where the issues presented will ultimately be legal and the agency action final. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (holding that the issues presented were not ripe because "further factual development would significantly advance [a court's] ability to deal with the legal issues presented") (cleaned up).

Plaintiffs' claims are not ripe because plaintiffs seek relief that would require this Court to opine on unknown future circumstances. For instance, the complaint mentions certain digital assets that may be traded on LEJILEX's planned trading platform, which the Commission has alleged to be securities in other courts. But the complaint does not (and could not) specify all the digital assets that may eventually be traded on LEJILEX's planned trading platform because it is unknown whether the platform will support their trading or whether there will be a viable market for those assets. Indeed, the complaint asks this Court to grant declaratory relief as to all digital assets "like the ones that LEJILEX intends to facilitate," Compl. ¶ 94, apparently including digital assets that do not even exist yet, even while acknowledging that digital assets are "wildly diverse," *id.* ¶ 54.

Moreover, whether sales of certain digital assets are sales of securities cannot be determined in the abstract. Nor can it be determined universally. Indeed, not every digital asset is necessarily offered and sold as a security. *See, e.g.*, *IMVU, Inc.*, SEC Staff No-Action Letter, 2020 WL 12949519 (Nov. 19, 2020) (Commission staff no-action letter regarding particular crypto asset); *Pocketful of Quarters, Inc.*, SEC Staff No-Action Letter, 2019 WL 8128104 (July 25, 2019) (same); *Turnkey Jet, Inc.*, SEC Staff No-Action Letter, 2019 WL 1554004 (Apr. 3, 2019) (same). Rather, a court must apply the fact-based, case-by-case analysis dictated by the Supreme Court's test in *SEC v. W.J. Howey Co.*, which has been used for over 70 years to determine whether a financial instrument is offered and sold as an "investment contract" and thus a security. 328 U.S. 293, 298-99 (1946) (focusing on "economic reality" to determine whether there was an investment of money in a common enterprise with the expectation of profits to be derived from the entrepreneurial or managerial efforts of others).

The same is true for determining whether LEJILEX's planned digital-asset trading platform will constitute an exchange, a broker, and/or a clearing agency for purposes of the federal securities laws. *See* Compl. ¶ 94. The Commission's regulations establish a functional test that requires the existence of various facts to determine if a trading platform is an exchange within the meaning of Section 3(a)(1) of the Exchange Act, 15 U.S.C. § 78c(a)(1), and thus must register or obtain an appropriate exception. *See* 17 C.F.R. § 240.3b-16(a) (providing that an entity acts as an exchange if it "(1) [b]rings together the orders for securities of multiple buyers and sellers; and (2) [u]ses established, non-discretionary methods (whether by providing a trading facility or by setting rules) under which such orders interact with each other, and the buyers and sellers entering such orders agree to the terms of a trade"). Similarly, to determine whether an entity is a broker—"any person engaged in the business of effecting transactions in securities for the account of others," 15 U.S.C. § 78c(a)(4)(A)—"[m]ost courts apply a list of factors," which are fact-intensive, including whether

there is a "history of selling the securities," "active recruitment of investors," and "payment by commission as opposed to salary." *SEC v. Collyard*, 861 F.3d 760, 766 (8th Cir. 2017) (cleaned up). Finally, a clearing agency "acts as an intermediary in making payments or deliveries or both in connection with transactions in securities or * * * provides facilities for comparison of data respecting the terms of settlement of securities transactions." 15 U.S.C. § 78c(a)(23)(A). None of this can be determined in the abstract, based on facts that do not yet exist, because what *actually* trades on LEJILEX's planned trading platform and the manner in which it operates will determine the applicability of the federal securities laws.

The Commission has not taken a position regarding LEJILEX, which should not be surprising given that LEJILEX has alleged no interactions with the Commission and the circumstances of its future operations remain unknown at this time. The Commission has not determined whether LEJILEX's planned digital-asset trading platform would be an unregistered securities exchange or whether LEJILEX would be a broker and/or a clearing agency. Nor has the Commission taken the position that all digital assets are securities or that all platforms dealing in digital assets are securities intermediaries. *See supra* 15.

Facts matter, particularly for entities pursuing new lines of business. For example, plaintiffs allege that Legit.Exchange will be "a novel digital asset [trading] platform" because "LEJILEX itself will never take custody of customer assets." Compl. ¶ 10. By comparison, the Commission alleged that other entities, such as Coinbase and Kraken, took custody of customer assets in connection with their trading platforms. *See* Complaint, *SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y. June 6, 2023), Dkt. 1; Complaint, *SEC v. Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal. Nov. 20, 2023), Dkt. 1. Moreover, the complaint does not specify which assets will trade on platforms that may be developed by LEJILEX or CFAT's other members, instead alleging vaguely that LEJILEX will permit the trading of digital assets "such as" those cited in other litigation. Compl. ¶ 61. But

16

plaintiffs' requested relief goes beyond even that unknown universe of assets; they seek to "free" the "digital asset industry" from regulation, *id.* ¶ 5, and so are asking the Court to make declarations about even more nascent digital assets and trading platforms.

Thus, plaintiffs are requesting a classic advisory opinion about hypothetical enforcement activity.  But this Court should not "adjudicat[e] whether federal law would allow an enforcement action" when that "require[s] * * * determin[ing] the legality of * * * hypothetical situations," particularly with respect to "a fuzzily defined range of enforcement actions that do not appear imminent."  *Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (cleaned up).  And because the contours of future enforcement actions are unknown, plaintiffs have at most "carved out" questions that could bear on liability in a potential future enforcement action, but the judicial power may be invoked only to "resolve [an] entire case or controversy," not to "gain a litigation advantage by obtaining an advance ruling" on discrete legal issues.  *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246 (1952) ("[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted.").  Plaintiffs' suppositions about legal arguments that the Commission may raise in potential future enforcement actions are insufficient to establish ripeness.  *See Walmart*, 21 F.4th at 312 (noting "the importance [for ripeness] of an unequivocally expressed position by the government" with respect to the specific actions at issue).

At bottom, plaintiffs invoke the declaratory judgment mechanism as an improper "'means of turning prosecutor into defendant'" long before the Commission has made any prosecutorial decisions.  *Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134, 141 (5th Cir. 2009), quoting *Standard Oil*, 449 U.S at 243.  They effectively request that this Court adjudicate the inverse of an enforcement action that the Commission has not brought—and may never bring—by declaring that

an unknown universe of digital assets are not securities, that LEJILEX does not fit into certain statutory categories that require registration, and that the Commission can never enforce the federal securities laws against LEJILEX and others.  While it remains unclear how plaintiffs will attempt to shoulder their burden of proving a negative—including that no digital asset, whether or not already in existence, could potentially be a security—it is clear that they are seeking this relief before even some of the necessary facts or circumstances have crystalized.

**2.    Any cognizable hardship to plaintiffs from withholding judicial review does not justify judicial intervention at this juncture.**

Plaintiffs will suffer no cognizable harm if this Court refuses to provide an advisory opinion blessing LEJILEX's planned future business.  Plaintiffs' challenge is based on the Commission's allegations in complaints filed against other entities.  But those allegations do not "create adverse effects of a strictly legal kind" for plaintiffs, which are "required for a showing of hardship," or affect plaintiffs' "primary conduct."  *Nat'l Park Hosp. Ass'n*, 538 U.S. at 809-10 (cleaned up).  Indeed, those allegations "do not command anyone to do anything or to refrain from doing anything; they do not grant, withhold, or modify any formal legal license, power, or authority; they do not subject anyone to any civil or criminal liability; they create no legal rights or obligations."  *Ohio Forestry*, 523 U.S. at 733.  It is only when a court adjudicates those allegations and renders a judgment that rights and obligations flow, and then only to the defendants in that action, not plaintiffs here.

Plaintiffs' complaint highlights why judicial intervention is inappropriate now.  They cite several examples of district court actions where the defendants have raised various arguments about why certain digital assets or actions related to those digital assets do not implicate the federal securities laws.  *E.g.*, Compl. ¶¶ 52-57.  But those actions demonstrate that a proper forum exists for arguments about digital assets, if and when enforcement actions regarding those assets ever arise.  As the Fifth Circuit held, ripeness principles preclude a hypothetical defendant from turning plaintiff to stop that future lawsuit when the hypothetical defendant "has the ability to test the government's

regulatory position in court by raising its theories as defenses" in an enforcement action.  *Walmart*, 21 F.4th at 313.  If LEJILEX or similarly situated entities are charged with violations of the federal securities laws, they can challenge the Commission's theories then, "when harm is more imminent and more certain."  *Ohio Forestry*, 523 U.S. at 734.

There is no cognizable hardship in refusing review now when, consistent with Article III, plaintiffs can raise all of their arguments in any eventual enforcement action.  *See, e.g., AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003) ("[T]he burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship to overcome the agency's challenge to ripeness.").  And the "expense and annoyance of litigation," even if "substantial," are "part of the social burden of living under government," *Standard Oil*, 449 U.S. at 244 (cleaned up), and thus "cannot constitute sufficient hardship for ripeness." *TOTAL Gas*, 859 F.3d at 337-38.  Finally, even if plaintiffs had alleged cognizable hardship, "[t]he fitness and hardship prongs must be balanced," *Texas*, 497 F.3d at 498, and here the issues presented are entirely unfit for judicial review.  *See supra* 12-18.

## B.  Plaintiffs lack standing.

The factors that demonstrate a lack of ripeness also show a lack of standing, which "tracks closely with ripeness" in pre-enforcement cases like this one.  *Walmart*, 21 F.4th at 313.  The justiciability problem stemming from the prematurity of plaintiffs' complaint "can be described in terms of standing (whether plaintiff[s] [are] threatened with imminent injury in fact fairly traceable to the challenged action of * * * defendant[s]), or in terms of ripeness (whether there is sufficient hardship to the parties in withholding court consideration until there is enforcement action)." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (cleaned up).  For standing purposes, plaintiffs must demonstrate an injury in fact that is "concrete, particularized, and actual or imminent;

fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

Because plaintiffs trip over the actual/imminent injury prong, this Court lacks jurisdiction. *See, e.g.*, *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 318-19 (5th Cir. 2002). "[T]o ensure that the alleged injury is not too speculative for Article III purposes [a] threatened injury must be certainly impending to constitute injury in fact"; "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up); *see, e.g.*, *Hodl*, 2023 WL 4852322, at *3 (holding that the plaintiff lacked standing to bring digital-asset-related declaratory judgment claims against the Commission because "[t]he possibility that the SEC may file suit against the [p]laintiff is not definite and concrete"). To reiterate, plaintiffs do not challenge any statute or rule that has been applied to them. Rather, they premise their standing on the Commission's claims in *other* federal courts that *other* entities violated the federal securities laws. *See supra* 3. However, those allegations have not been asserted against plaintiffs, and "a party cannot challenge a statute as-applied unless the statute has been applied to him." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

Plaintiffs are left to allege standing based solely on a supposed "credible threat of enforcement." Compl. ¶ 92.[4] But there is no standing to seek judicial review of an agency's interpretation of a concededly valid statute before that interpretation results in even preliminary steps that could lead to an enforcement action related to the plaintiff.[5] In any event, plaintiffs have

---

[4] Plaintiffs allege that CFAT has standing based on its members, Compl. ¶ 92, but the only identified member is LEJILEX, which lacks standing. *See, e.g., Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (per curiam) ("To establish associational standing, [p]etitioners must show that * * * their members would independently have Article III standing to sue * * * ."); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm * * * .").

[5] The Fifth Circuit's decision in *Braidwood Management, Inc. v. EEOC*, cited in the complaint (¶ 92), is not to the contrary. 70 F.4th 914 (5th Cir. 2023). The Fifth Circuit concluded that the plaintiffs had

failed to allege that the supposedly threated enforcement action is sufficiently imminent.  *See supra* 12-14.  Plaintiffs' complaint speaks generally of business operations that may—or may not—occur in the future.  But the existence of a digital-asset trading platform, with its unique characteristics, is a predicate to the series of events that would have to transpire before that business could ever face the possibility—not the certainty—of the type of enforcement action that plaintiffs ask this Court to enjoin.  "[M]erely foreseeable future litigation resulting from a statutory interpretation that an agency has adopted in an adjudication is * * * without more * * * too speculative to satisfy Article III's injury-in-fact requirement," as opposed to when "the prospect of impending harm [is] effectively certain."  *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1313-14 (D.C. Cir. 2010).

## III.   This lawsuit is an improper programmatic challenge.

The combination of plaintiffs' failure to identify a discrete final agency action that would waive sovereign immunity and their request for extraordinarily broad relief confirms that they are advancing the exact type of programmatic challenge that the Supreme Court has forbidden and over which courts lack jurisdiction.  As the Fifth Circuit explained, the Supreme Court's decision in *Lujan*, "announced a prohibition on programmatic challenges."  *Sierra Club*, 228 F.3d at 566.  In *Lujan*, a plaintiff challenged the "entirety" of the Bureau of Land Management's program for reviewing certain uses of federal lands.  497 U.S. at 890-92.  Rather than identify a particular final agency action or limit its challenge to a single "order or regulation," or even a "completed universe of particular [agency] orders and regulations," the plaintiff challenged the "continuing (and thus constantly

---

alleged "a cognizable injury in a pre-enforcement challenge" based on, among other things, "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute."  *Id.* at 924-25 (cleaned up).  For the reasons explained above in discussing *Bear Creek*, *supra* 9-10, the credible threat of enforcement was based on the EEOC having "already admitted that [plaintiffs'] specific policies violate[d] its guidance" (*id.* at 919-20, 931), and plaintiffs' views that the statute's religious-liberty exemption protected their First Amendment rights (*id.* at 924-26).

changing) operations" of the agency in administering its land use review program.  *Id.* at 890.  The Court rejected this gambit, holding that the plaintiff could not "seek *wholesale* improvement of this program by court decree, rather than in the offices of the [agency] or the halls of Congress, where programmatic improvements are normally made."  *Id.* at 891.  Rather, the plaintiff had to "direct its attack against some particular 'agency action' that causes it harm" as a broad program cannot be an agency action for judicial review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him."  *Id.*

The Fifth Circuit has applied *Lujan* in several instances to respect the "institutional limits on courts which constrain [their] review to narrow and concrete actual controversies" and avoid encroachment "on the other branches of government."  *Sierra Club*, 228 F.3d at 566.  In *Sierra Club*, the court rejected a challenge to an agency's timber-management program as an impermissible attempt to interfere with an agency program, even though the plaintiffs identified some allegedly improper final agency actions within that program.  *Id.* at 567-68.  In *Louisiana*, the court rejected a challenge to the Army Corps of Engineers' alleged inaction in maintaining a waterway because the plaintiff did not identify a specific agency action, but rather focused on the agency's alleged failures over a lengthy period of time.  948 F.3d at 321-22; *see also Walmart*, 21 F.4th at 309 (no waiver of sovereign immunity under Section 702 for programmatic challenges even if a plaintiff points to specific agency actions encompassed by that program).  And in *Alabama-Coushatta*, the court held that the plaintiff brought an impermissible programmatic challenge—and courts lacked jurisdiction—when it failed to point to identifiable actions by the agency, but rather challenged overall management of natural resources on certain land.  757 F.3d at 489-91.

This case suffers from the same flaws; plaintiffs' lawsuit is an impermissible programmatic challenge to the Commission's enforcement activities.  The complaint consists mostly of a history of

digital assets and what plaintiffs describe as the Commission's "[c]ampaign to [e]xpand [i]ts [r]egulatory [a]uthority" over such assets.  Compl. 24; *see e.g.*, *id.* ¶¶ 46-57.  Rather than focus on LEJILEX (or CFAT), the complaint emphasizes, at length, the Commission's overall treatment of digital assets and then asks this Court to "free [plaintiffs] and the rest of the digital asset industry from the imminent threat of * * * SEC enforcement actions."  *Id.* ¶ 5.  As with the *Lujan* plaintiffs, plaintiffs here are not challenging discrete agency actions but rather a regulatory "view," *id.* ¶ 2, and the aggregation of the Commission's enforcement actions "cannot be laid before the courts for wholesale correction under the APA," *Lujan*, 497 U.S. at 893.  Even more problematic from an Article III perspective is that plaintiffs, in the guise of challenging a regulatory "view," are seeking to short-circuit a range of possible enforcement activity, which necessarily would turn on specific facts and circumstances that are as yet unknown.

The improper programmatic nature of plaintiffs' challenge is underscored by the far-reaching relief they are requesting.  Plaintiffs seek a declaration regarding the legal status of "secondary- market sales of digital assets" that is neither limited to certain digital-asset trading platforms nor to certain digital assets.  *See* Compl. ¶ 94 ("Declare that secondary-market sales of digital assets *like the ones* that LEJILEX intends to facilitate through the Legit.Exchange are not sales of securities as defined by the [Securities] Exchange Act * * * and the Securities Act * * * .") (emphasis added).  Plaintiffs are asking this Court to declare (and have assumed the burden of proving) that no digital asset sale—regardless of its particulars—could ever be a securities transaction.  But such relief is nonjusticiable and intrudes on the prerogatives of the other branches of government.  Moreover, plaintiffs ask this Court to enjoin the Commission from bringing enforcement actions against not only LEJILEX but also unidentified "CFAT members," *id.*, potentially granting immunity for a range of unspecified future conduct.  In short, plaintiffs ask this

23

Court to place all digital-asset trading platforms beyond the reach of the federal securities laws and the Commission's enforcement for all time, regardless of the factual circumstances that may arise.

This programmatic challenge is inappropriate precisely because the "ruling * * * sought * * * would reach far beyond the particular case," *Wycoff Co.*, 344 U.S. at 243, and "unleash ramifications to be resolved in future [and potentially currently-pending] litigation," *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 646 (1st Cir. 2019). Indeed, in asking this Court to declare that "secondary-market sales of digital assets * * * are not sales of securities," Compl. ¶ 94, plaintiffs intentionally refer to specific digital assets that are at issue in pending Commission enforcement actions. *See id.* ¶ 61. The requested relief would therefore necessarily entangle this Court in those enforcement actions.

Moreover, while the complaint is silent as to CFAT's members beyond LEJILEX, in asking this Court to enjoin the Commission from bringing enforcement actions against "CFAT members," *id.* ¶ 94, plaintiffs are potentially asking this Court to enjoin future, and perhaps ongoing, enforcement actions. It would be inappropriate to use a programmatic challenge—or any challenge—to halt proceedings in other courts because "the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA*, 751 F.2d 721, 728 (5th Cir. 1985); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (applying this "principle[] of comity"). In light of its potential ramifications for pending Commission enforcement actions, as well as for future Commission enforcement actions regarding entities and digital assets having no connection to plaintiffs, the requested relief renders this case unfit for judicial decision.

This Court should make no mistake about the inappropriate burden plaintiffs are asking it to shoulder. They want this Court to go far beyond just stamping its imprimatur on LEJILEX's future

business plans.  They ask this Court to invade the policy-making spheres reserved to Congress and to the Commission by Congress and to possibly interfere with ongoing litigation in other courts. And in doing so, they are asking this Court to make determinations about the Commission's overall enforcement program, including fact-bound determinations involving an unknown (and an unknowable) number of digital assets.  Each of these requests is individually improper, and their combination confirms that dismissal for lack of subject-matter jurisdiction is the correct path to avoid the morass plaintiffs invite this Court to enter.

## CONCLUSION

The complaint should be dismissed for lack of subject-matter jurisdiction.


Dated: May 24, 2024                                    Respectfully submitted,


*/s/ Jason J. Rose*                                    Jeffrey A. Berger*
Jason J. Rose                                          Illinois Bar No. 6282511
Texas Bar No. 24007946                                Ezekiel L. Hill*
Securities and Exchange Commission                    D.C. Bar No. 1684647
801 Cherry Street, Suite 1900                         David D. Lisitza*
Fort Worth, Texas 76102                               California Bar No. 225824
(817) 978-1408 (phone)                                Securities and Exchange Commission
(817) 978-4927 (facsimile)                            100 F Street NE
rosej@sec.gov                                         Washington, DC 20549
                                                      (202) 551-5100 (phone)
                                                      bergerje@sec.gov
                                                      hillez@sec.gov
                                                      lisitzad@sec.gov

*Counsel for Defendants*

* Not admitted in N.D. Tex.  *Pro hac vice* motions pending.

**CERTIFICATE OF SERVICE**

I affirm that on May 24, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Fort Worth Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jason J. Rose*
Jason J. Rose