# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| LEJILEX; CRYPTO FREEDOM ALLIANCE OF TEXAS,<br><br>Plaintiffs,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION; ERIC R. WERNER; GARY GENSLER; CAROLINE A. CRENSHAW; JAIME E. LIZARRAGA; HESTER M. PEIRCE; and MARK T. UYEDA, in their official capacities,<br><br>Defendants. | C.A. No. 4:24-cv-00168-O |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR SECOND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ............................................................................................................................... 5

I.      This action is not justiciable because this Court lacks jurisdiction ................................. 6

II.     The complaint fails to state a claim authorizing the requested declaratory relief ..................... 8

        A.   The complaint fails to allege a cause of action ......................................................... 8

        B.   The complaint does not allege facts demonstrating that, as a matter of law,
             digital-asset transactions cannot be securities transactions ................................... 11

             1.   Whether a digital-asset transaction is a securities transaction depends on
                  its facts and circumstances ............................................................................. 12

             2.   The complaint fails to allege facts demonstrating that, as a matter of law,
                  a digital-asset transaction cannot be a securities transaction ....................... 17

             3.   The complaint fails to allege facts demonstrating that, as a matter of law, a
                  secondary-market digital-asset transaction cannot be a securities transaction ......... 19

III.    This Court should exercise its discretion to dismiss this lawsuit .............................. 22

IV.     Alternatively, the grant should grant summary judgment for the defendants........................... 24

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Pages**

*Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
    625 F.3d 185 (5th Cir. 2010) ................................................................................ 13

*Agri-Trans Corp. v. Gladders Barge Line, Inc.*,
    721 F.2d 1005 (5th Cir. 1983) .............................................................................. 23

*Alabama-Coushatta Tribe of Tex. v. United States*,
    757 F.3d 484 (5th Cir. 2014) .................................................................................. 6

*Allen v. Wright*,
    468 U.S. 737 (1984) .............................................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ........................................................................................ 8, 18

*Braidwood Management, Inc. v. EEOC*,
    70 F.4th 914 (5th Cir. 2023) ................................................................................ 11

*Cadle Co. v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ................................................................................ 24

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................. 5

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*,
    915 F.2d 167 (5th Cir. 1990) ................................................................................. 8

*Connors v. Lexington Ins. Co.*,
    666 F. Supp. 434 (E.D.N.Y. 1987) ....................................................................... 15

*Cont'l Mktg. Corp. v. SEC*,
    387 F.2d 466 (10th Cir. 1967) ............................................................................. 14

*FDA v. All. for Hippocratic Med.*,
    Nos. 23-235 & 23-236, 2024 WL 2964140 (U.S. June 13, 2024) ....................................... 7

*Frye v. Anadarko Petroleum Corp.*,
    953 F.3d 285 (5th Cir. 2019) ................................................................................. 6

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    756 F.2d 230 (2d Cir. 1985) ................................................................................ 20

*Groos Nat'l Bank v. Comptroller of Currency*,

573 F.2d 889 (5th Cir. 1978) ................................................................................................ 23

*Harris Cnty. v. MERSCORP Inc.*,
   791 F.3d 545 (5th Cir. 2015) ............................................................................................ 8

*Hodge v. Engleman*,
   90 F.4th 840 (5th Cir. 2024) ............................................................................................ 5

*Hosein v. Gonzales*,
   452 F.3d 401 (5th Cir. 2006) ............................................................................................ 6

*In re Living Benefits Asset Mgmt., L.L.C.*,
   916 F.3d 528 (5th Cir. 2019) .......................................................................................... 13

*In re Ripple Labs, Inc. Litig.*,
   No. 18-cv-06753, 2024 WL 3074379 (N.D. Cal. June 20, 2024) ............................................ 15, 21

*Johnson v. Harris Cnty.*,
   83 F.4th 941 (5th Cir. 2023) .......................................................................................... 18

*Lorenzo v. SEC*,
   587 U.S. 71 (2019) ...................................................................................................... 12

*Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*,
   723 F.2d 1173 (5th Cir. 1984) ........................................................................................ 8

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .................................................................................................... 22

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
   571 U.S. 191 (2014) ..................................................................................................... 8

*Noa v. Key Futures, Inc.*,
   638 F.2d 77 (9th Cir. 1980) ........................................................................................... 15

*Orix Credit All., Inc. v. Wolfe*,
   212 F.3d 891 (5th Cir. 2000) ..................................................................................... 5-6, 6

*Parker v. Sony Pictures Ent., Inc.*,
   260 F.3d 100 (2d Cir. 2001) ........................................................................................... 5

*Reves v. Ernst & Young*,
   494 U.S. 56 (1990) ...................................................................................................... 12

*SEC v. Aqua-Sonic Prods. Corp.*,
   687 F.2d 577 (2d Cir. 1982) .......................................................................................... 14

*SEC v. Arbitrade Ltd.*,
   668 F. Supp. 3d 1290 (S.D. Fla. 2023) .............................................................................. 15

*SEC v. Arcturus Corp.*,
   928 F.3d 400 (5th Cir. 2019) ......................................................................................... 13

*SEC v. Balina,*
  No. 22-cv-00950, 2024 WL 2332965 (W.D. Tex. May 22, 2024) ...................................... 15

*SEC v. Blockvest, LLC,*
  No. 18-cv-2287, 2019 WL 625163 (S.D. Cal. Feb. 14, 2019) .......................................... 15

*SEC v. C.M. Joiner Leasing Corp.,*
  320 U.S. 344 (1943) ...................................................................................................... 20

*SEC v. Coinbase, Inc.,*
  No. 23-cv-4738, 2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024) ..................................... *passim*

*SEC v. Edwards,*
  540 U.S. 389 (2004) ............................................................................................. 12, 13-14

*SEC v. Kik Interactive Inc.,*
  492 F. Supp. 3d 169 (S.D.N.Y. 2020) ...................................................................... 15, 21

*SEC v. Koscot Interplanetary, Inc.,*
  497 F.2d 473 (5th Cir. 1974) ........................................................................................ 14

*SEC v. LBRY, Inc.,*
  639 F. Supp. 3d 211 (D.N.H. 2022) ........................................................................ 15, 17

*SEC v. LBRY, Inc.,*
  No. 23-1743 (1st Cir. Oct. 23, 2023) .......................................................................... 15

*SEC v. Life Partners, Inc.,*
  87 F.3d 536 (D.C. Cir. 1996) ...................................................................................... 14

*SEC v. Merchant Capital LLC,*
  483 F.3d 747 (11th Cir. 2007) .................................................................................... 14

*SEC v. NAC Found., LLC,*
  512 F. Supp. 3d 988 (N.D. Cal. 2021) ........................................................................ 15

*SEC v. Nat. Diamonds Inv. Co.,*
  No. 19-cv-80633, 2019 WL 13277296 (S.D. Fla. May 28, 2019) ................................... 15

*SEC v. Ralston Purina Co.,*
  346 U.S. 119 (1953) ...................................................................................................... 12

*SEC v. Ripple Labs, Inc.,*
  682 F. Supp. 3d 308 (S.D.N.Y. 2023) ............................................................ 15, 20-21, 22

*SEC v. Ripple Labs, Inc.,*
  No. 20-cv-10832, 2023 WL 6445969 (S.D.N.Y. Oct. 3, 2023) ...................................... 22

*SEC v. SG Ltd.,*
  265 F.3d 42 (1st Cir. 2001) .......................................................................................... 14

*SEC v. Telegram Grp. Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020) ........................................................................ 15, 16

*SEC v. Telegram Grp. Inc.*,
    No. 20-1076, 2020 WL 3467671 (2d Cir. May 22, 2020) ...................................... 15

*SEC v. Terraform Labs Pte. Ltd.*,
    684 F. Supp. 3d 170 (S.D.N.Y. 2023) ............................................................ 15, 20, 21

*SEC v. Terraform Labs Pte. Ltd.*,
    No. 23-cv-1346, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023) ........................... 15, 17

*SEC v. Tyler*,
    2002 WL 32538418 (N.D. Tex. Feb. 21, 2002) ................................................... 15

*SEC v. Wahi*,
    No. 22-cv-01009, 2024 WL 896148 (W.D. Wash. Mar. 1, 2024) .......................... 15

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ................................................................................. *passim*

*Sherwin-Williams Co. v. Holmes Cnty.*,
    343 F.3d 383 (5th Cir. 2003) .......................................................................... 5, 22, 23

*St. Paul Ins. Co. v. Trejo*,
    39 F.3d 585 (5th Cir.1994) ........................................................................................ 23

*Tcherepnin v. Knight*,
    389 U.S. 332 (1967) .................................................................................................. 12

*United Hous. Found., Inc. v. Forman*,
    421 U.S. 837 (1975) .................................................................................................. 12

*Vantage Trailers, Inc. v. Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009) .................................................................................... 11

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA*,
    751 F.2d 721 (5th Cir. 1985) .................................................................................... 24

*Williams v. Wells Fargo Bank, N.A.*,
    560 F. App'x 233 (5th Cir. 2014) .............................................................................. 11

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) .................................................................................... 14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .................................................................................................. 22

**Statutes**

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*

    5 U.S.C. § 702 ................................................................................................ 6

    5 U.S.C. § 701(a)(2) ....................................................................................... 7

Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*

    Section 2(a)(1), 15 U.S.C. § 77b(a)(1) ........................................................ 12

    Section 5(a), 15 U.S.C. § 77e(a) .................................................................. 21

    Section 5(c), 15 U.S.C. § 77e(c) .................................................................. 21

    Section 20(b), 15 U.S.C. § 77t(b) .................................................................. 9

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

    Section 3(a)(10), 15 U.S.C. § 78c(a)(10) .................................................... 12

    Section 5, 15 U.S.C. § 78e ........................................................................... 21

    Section 12(d), 15 U.S.C. § 78u(d) ................................................................. 9

Declaratory Judgment Act, 28 U.S.C. § 2201 ................................................. 3, 8

**Rules and Regulations**

Federal Rule of Civil Procedure 12(b)(1) .................................................. 4, 5, 6

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 5

Federal Rule of Civil Procedure 56(a) ............................................................ 5

17 C.F.R. § 202.5(b) ......................................................................................... 9

**Other Authorities**

*IMVU, Inc.,*
    SEC Staff No-Action Letter, 2020 WL 12949519 (Nov. 19, 2020) ................. 18

*Pocketful of Quarters, Inc.,*
    SEC Staff No-Action Letter, 2019 WL 8128104 (July 25, 2019) ............... 18-19

*Turnkey Jet, Inc.,*
    SEC Staff No-Action Letter, 2019 WL 1554004 (Apr. 3, 2019) ................... 19

**INTRODUCTION**

Plaintiffs LEJILEX, a company that "wishes" to launch a trading platform for digital assets, and the Crypto Freedom Alliance of Texas (CFAT), whose members include LEJILEX, request that this Court rule, in the form of a declaratory judgment, that the "digital asset industry" should be "free" from the federal securities laws.  They ask for this extraordinary ruling in the abstract, without pointing to any concrete facts, reviewable agency action, or imminent legal harm.  And they ask this Court to declare that digital-asset transactions cannot be securities transactions even though, under binding Supreme Court precedent, the question of whether a digital-asset transaction is a securities transaction turns on the transaction's facts and circumstances.  Because plaintiffs' suit is so premature, and their request for relief so broad, plaintiffs cannot demonstrate subject-matter jurisdiction.  Moreover, plaintiffs have failed to state a claim because the complaint does not allege facts demonstrating that a digital-asset transaction can never be a securities transaction as a matter of law.  And even if this Court had subject-matter jurisdiction and the complaint stated a claim, this Court should exercise its discretion to dismiss the complaint because of the unusually broad relief sought and its potential interference with the Commission's statutory responsibilities and other judicial proceedings.  Consequently, this Court should dismiss the complaint for three reasons.

First, as detailed in defendants' pending motion to dismiss, this Court lacks subject-matter jurisdiction several times over.  The action is barred by sovereign immunity.  It fails to present a justiciable case or controversy.  And the request for declaratory relief is a jurisdictionally improper programmatic challenge to how the Commission enforces the federal securities laws.

Second, the complaint fails to state a claim upon which relief can be granted because it does not identify a proper cause of action underlying plaintiffs' request for relief and because its factual allegations do not provide a plausible basis for categorically excluding digital-asset transactions from the reach of the federal securities laws.  Plaintiffs ask this Court to declare that digital-asset

transactions cannot be securities transactions but fail to reconcile that request with what they acknowledge to be the controlling law—the Supreme Court's *Howey* decision—for determining whether such a transaction involves an investment contract and is thus a securities transaction. *Howey* imposes a facts-and-circumstances test, and plaintiffs have not alleged facts demonstrating that, as a matter of law, the entire class of digital-asset transactions do not involve investment contracts. Nor have plaintiffs alleged facts demonstrating that, as a matter of law (and contrary to the rulings of courts that have addressed the issue), a secondary-market digital-asset transaction cannot be a securities transaction unless it involves the transfer of an unspecified "ongoing obligation" of the issuer to manage the common enterprise for the purchaser's benefit. Such a requirement has no basis in the federal securities laws and is foreclosed by binding precedent and decades of caselaw applying it.

Finally, even if plaintiffs could overcome those hurdles, this Court should exercise its discretion to dismiss the complaint. There is no right to a declaratory judgment; it is a discretionary remedy. This Court should decline to adjudicate plaintiffs' request for relief for the entire "digital asset industry," which would impinge upon the Commission's congressionally mandated duty to enforce the federal securities laws and potentially entangle this Court in Commission enforcement actions currently pending in other courts.

Alternatively, and for the same reasons, the Court should grant summary judgment in defendants' favor because plaintiffs have not proven and cannot prove, as a matter of law, that they are entitled to the exceptionally broad declaratory relief that they request.

## BACKGROUND

Plaintiffs' complaint consists mainly of a wide-ranging commentary on the federal securities laws and digital assets. *See, e.g.*, Compl. ¶¶ 1-4, 19-57, 64-84, 87, 90. Plaintiffs offer arguments in the form of allegations about how courts have interpreted those laws, particularly the meaning of

"investment contract" in the statutory definition of "security." *See, e.g., id.* ¶¶ 19-28. They provide

their views on the so-called "digital asset industry." *See, e.g., id.* ¶¶ 29-39. And they opine on several

pending Commission enforcement actions related to certain digital assets. *See, e.g., id.* ¶¶ 46-57. But

the complaint contains relatively few allegations about plaintiffs. *See, e.g., id.* ¶¶ 5, 8-11, 58-63, 88-89.

As to the corporate plaintiff, LEJILEX, plaintiffs allege that it "is developing" "a novel

digital asset [trading] platform called the Legit.Exchange * * * that allows users to trade digital assets

with each other." *Id.* ¶¶ 10, 58. Plaintiffs allege that LEJILEX "wishes to launch" this platform at

some future date and "plans to permit trading" of digital assets that the Commission has alleged to

be securities in enforcement actions against other entities, but they do not allege that LEJILEX will

necessarily facilitate trading of those assets or that the trading platform will be limited to those

assets. *Id.* ¶¶ 5, 61. Rather, the allegations describe LEJILEX in the future tense—what it will do if

and when it launches its proposed trading platform. *See, e.g., id.* ¶¶ 59-60. Plaintiffs allege that

LEJILEX "does not intend to register as a securities exchange, broker, or clearing agency with the

SEC," and "will not be registering its platform with the SEC." *Id.* ¶¶ 61, 88.

As to the organizational plaintiff, CFAT, plaintiffs allege that it is a "non-profit membership

organization" that "advocates for the responsible development of digital asset policies in Texas." *Id.*

¶ 11. Plaintiffs allege that LEJILEX is a member of CFAT, but the complaint does not identify any

other CFAT member. Nonetheless, the complaint alleges that other CFAT members face a threat

of Commission enforcement action based on their unspecified "planned or ongoing participation in

the digital asset industry." *Id.* ¶ 89.

LEJILEX and CFAT filed this lawsuit "to prevent the SEC from subjecting LEJILEX and

CFAT's members to * * * enforcement actions." *Id.* ¶ 93; *see id.* ¶ 5. The complaint invokes the

Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, and bases its request for relief on a supposed

"genuine threat" of a Commission enforcement action against LEJILEX. Compl. ¶¶ 86-88. But the

complaint does not allege that the Commission has threatened to bring an enforcement action against LEJILEX. Indeed, the complaint does not allege any Commission conduct related to LEJILEX—no correspondence, no calls with staff, no investigation—or even that the Commission was aware of LEJILEX prior to the filing of this lawsuit. Rather, the complaint premises the supposed "genuine threat" on "the SEC's history of bringing enforcement actions against other digital-asset trading platforms engaged in the same conduct," *id.* ¶ 88, and cites three Commission enforcement actions against existing digital-asset trading platforms. *Id.* ¶¶ 52, 57 (citing enforcement actions related to the Binance, Coinbase, and Kraken trading platforms). The complaint also alleges that "CFAT is harmed by [the] threat" of its members potentially facing Commission enforcement action, but, again, does not identify those members or detail their operations or interactions, if any, with the Commission. *Id.* ¶ 89.

Plaintiffs seek wide-ranging declaratory and injunctive relief to "free them and the rest of the digital asset industry" from Commission regulation. *Id.* ¶ 5. They ask this Court to "[d]eclare that secondary-market sales of digital assets like the ones that LEJILEX intends to facilitate through the Legit.Exchange are not sales of securities" as defined by the federal securities laws. *Id.* ¶ 94. And they ask this Court to declare that LEJILEX—should it commence operations—would not be an unregistered securities exchange, broker, or clearing agency under the Securities Exchange Act of 1934. *Id.* Finally, they ask this Court to "[e]njoin the SEC from bringing an enforcement action against LEJILEX or similarly situated CFAT members premised on any purported failure to register as securities exchanges, brokers, or clearing agencies." *Id.*

On May 24, 2024, defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. 31. The next business day, this Court issued an order setting a briefing schedule for dispositive motions and informing the parties that defendants' pending motion to dismiss would be fully briefed as part of that briefing cycle. Dkt. 32. In filing this motion, which

incorporates by reference their pending motion to dismiss, defendants are not waiving their rights to answer the complaint or to engage in discovery (should any prove necessary).

## LEGAL STANDARD

In addition to the jurisdictional failures described in defendants' pending motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "Although [courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (cleaned up).

Alternatively, summary judgment should be granted in the defendants' favor because "there is no genuine dispute as to any material fact" and defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A defendant "need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (cleaned up).

## ARGUMENT

This Court should dismiss plaintiffs' complaint on jurisdictional, pleading, and prudential grounds.  In deciding whether to decide or dismiss a declaratory judgment suit, a district court "must determine: (1) whether the declaratory [judgment] action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003), citing *Orix Credit*

*All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  All three factors, independently and in conjunction, support a ruling in defendants' favor here.

## I.      This action is not justiciable because this Court lacks jurisdiction.

The complaint should be dismissed for lack of subject-matter jurisdiction, as defendants explained in their pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (Dkt. 31), which defendants incorporate by reference in accordance with this Court's May 28, 2024 order (Dkt. 32).  A declaratory judgment action is justiciable only if "an actual controversy exists between the parties."  *Orix Credit All.*, 212 F.3d at 895 (cleaned up); *see also Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019); *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (per curiam) (interpreting the DJA's "'case of actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement").  Three independent and fatal jurisdictional problems undermine plaintiffs' request for relief.

First, sovereign immunity bars this action because plaintiffs have not identified any final agency action that would waive sovereign immunity under the Administrative Procedure Act (APA). Dkt. 31 at 4-11.  Although plaintiffs do not allege an APA cause of action, they invoke Section 702 of the APA (Compl. ¶ 92), which waives sovereign immunity for actions seeking nonmonetary relief brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  But Section 702 does not waive sovereign immunity here because plaintiffs have not identified a final agency action that caused them legal wrong. *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014).  Instead, they point to complaints filed by the Commission in enforcement actions in other courts against other parties, but those are requests for judicial relief, not final agency actions.  Moreover, even if plaintiffs could somehow identify final agency action, the APA's waiver of sovereign immunity would not apply

because they challenge hypothetical future investigatory and prosecutorial decisions by the Commission, which are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2).

Second, ripeness and standing requirements preclude this Court from exercising jurisdiction consistent with Article III of the Constitution. Dkt. 31 at 11-21. Federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *FDA v. All. for Hippocratic Med.*, Nos. 23-235 & 23-236, 2024 WL 2964140, at *5 (U.S. June 13, 2024), quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984). Plaintiffs ask this Court to address hypothetical Commission enforcement actions but the issues presented are unfit for judicial decision. And the cognizable hardship to plaintiffs of forgoing judicial review, if any, does not justify judicial intervention at this juncture. Moreover, there is no standing to seek judicial review of an agency's interpretation of concededly valid statutes before that interpretation results in even preliminary steps that could lead to an enforcement action against the plaintiff. As the Supreme Court recently reiterated, an injury "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon"—and when a plaintiff "seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id.* at *6. Plaintiffs here have failed to allege that the supposedly threatened enforcement action is sufficiently imminent to permit adjudication of their lawsuit.

Third, the complaint, which seeks to place the undefined and amorphous "digital asset industry" beyond the reach of the federal securities laws, constitutes an improper programmatic challenge, which this Court lacks jurisdiction to adjudicate. Dkt. 31 at 21-25. In asking this Court to make determinations about the Commission's overall enforcement program, including fact-bound determinations involving an unknown (and unknowable) number of digital assets, plaintiffs ask this Court to invade the policy-making spheres reserved to Congress and to the Commission by Congress and to interfere with ongoing litigation in other courts.

**II.     The complaint fails to state a claim authorizing the requested declaratory relief.**

This Court lacks authority to grant the requested declaratory relief because it does not correspond to a cognizable underlying cause of action, and plaintiffs have not alleged—and could not possibly allege—a plausible claim that digital-asset transactions can never be securities transactions.  In order for plaintiffs "to raise a claim in federal court" and obtain the relief sought, they must "demonstrate * * * that they * * * have a right of action to initiate that claim," *Harris Cnty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).  When a complaint fails to state as claim, as has occurred here, it must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

**A.     The complaint fails to allege a cause of action.**

Lacking a cause of action premised upon a statute or constitutional provision, plaintiffs proceed with nothing more than an invocation of the DJA.  The DJA provides in relevant part that "[i]n a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  But the DJA is "only procedural, leaving substantive rights unchanged."  *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) (cleaned up).  When a plaintiff seeks declaratory relief, "[w]hat is litigated * * * is the precise issue which could have been litigated * * * in a coercive action brought by the declaratory defendant."  *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) (cleaned up).  "[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a [DJA] * * * ."  *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990).

Here, however, the complaint does not seek to litigate an underlying cause of action that the Commission has threatened to bring—or ever could bring—against plaintiffs.  The complaint does not seek a declaration as to whether specific conduct by plaintiffs violates the federal securities laws

such that it could potentially give rise to enforcement action by the Commission.[1]  Rather, the complaint broadly seeks to litigate the Commission's general approach to enforcing the federal securities laws in connection with digital assets, asking this Court to "[d]eclare that secondary-market sales of digital assets like the ones that LEJILEX intends to facilitate through the Legit.Exchange are not sales of securities."  Compl. ¶ 94.

Similarly, the complaint requests that this Court "[e]njoin the SEC from bringing an enforcement action against LEJILEX or similarly situated CFAT members premised on *any* purported failure to register as securities exchanges, brokers, or clearing agencies."  *Id.* (emphasis added).  There is no limit to that request.  Indeed, plaintiffs allege that the purpose of this lawsuit is to "free" the "digital asset industry" from regulation regardless of the specifics of any particular digital asset, any particular digital-asset intermediary, and any particular factual circumstances about how such a digital asset trades.  *Id.* ¶ 5.  While the complaint refers to various digital assets that the Commission has alleged to be securities in enforcement actions against other parties (*id.* ¶¶ 61, 88), the requested relief is not limited to those assets.  It is conjecture whether those assets will ever trade on LEJILEX's platform, assuming it commences operations, and plaintiffs' request for relief also would cover unspecified conduct involving unspecified digital assets by CFAT's unspecified other members.

Thus, even were it possible to deploy the DJA to assert the inverse of a Commission enforcement action—to litigate in a declaratory judgment action the negative of a Commission cause of action against these plaintiffs—it nonetheless would not be possible here.  When the Commission asks a district court for a judgment as part of the Commission's mission of enforcing the federal

---

[1] Commission enforcement actions are brought by the Commission, not its Commissioners or officers.  *See, e.g.*, 15 U.S.C. §§ 77t(b), 78u(d); *see also* 17 C.F.R. § 202.5(b).  Thus, even if the complaint otherwise stated a claim against the Commission, it would fail to state a claim against the other defendants.

securities laws, the Commission does not—and would not be permitted to—litigate or otherwise present for adjudication the sort of abstract questions presented by the complaint.  In the Commission enforcement actions cited in the complaint (Compl. ¶¶ 52, 57), for example, the Commission alleged that particular securities transactions on particular exchanges involving particular digital assets violated particular federal securities laws in particular ways and sought particular remedies.  *See, e.g.*, Compl. ¶¶ 114-305, *SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y. filed June 6, 2023); Compl. ¶¶ 282-351, *SEC v. Binance Holdings Ltd.*, No. 1:23-cv-01599 (D.D.C. filed June 5, 2023); Compl. ¶¶ 228-445, *SEC v. Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal. filed Nov. 20, 2023).[2]  Contrary to the complaint's suggestions that enforcement actions shield the Commission's interpretations of the federal securities laws from judicial review (*see, e.g.*, Compl. ¶ 4), filing an enforcement action does the exact opposite—it exposes the Commission's allegations to review as part of the litigation process.  To survive dismissal and obtain a judgment, the Commission sets out its view of how the law applies to facts, and defendants then have the opportunity to disagree, with judges or juries ultimately deciding who is correct.

Here, by contrast, the requested relief would require this Court to adjudicate issues that are not confined to specific digital-asset transactions.  The Commission could not win a correspondingly amorphous enforcement action; it could not bring a suit against a defendant, ask a court to declare that all "secondary-market sales of digital assets" are the sales of securities, and then use that judgment to bind other entities.  As explained in defendants' pending motion to dismiss (Dkt. 31 at 21-25), the complaint focuses on plaintiffs' views about the Commission's overall treatment of digital assets and asks this Court to free "the digital asset industry from * * * SEC enforcement

---

[2] The specificity of the Commission's allegations in those enforcement actions belies plaintiffs' repeated claim that "[t]he SEC * * * has asserted that practically all sales of digital assets" are securities transactions.  Compl. ¶ 74; *see also id.* ¶¶ 2, 87.

actions." Compl. ¶ 5. The complaint seeks to litigate not a potential future enforcement action based on a concrete set of facts but rather "the SEC's * * * view of its regulatory authority" (*e.g., id.*) and whether digital-asset transactions can ever implicate the federal securities laws (*e.g., id.* ¶ 2). Because the complaint invokes the DJA but fails to seek relief corresponding to an underlying cause of action, it fails to state a claim upon which the relief plaintiffs seek may be granted.[3] *See, e.g., Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014) (per curiam) (concluding that a determination that the underlying causes of action were properly dismissed "likewise warrants affirmance of the court's dismissal of [a] request for declaratory judgment"); *see also Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (stating that a DJA action must seek "specific relief through a decree of a conclusive character").

### B.   The complaint does not allege facts demonstrating that, as a matter of law, digital-asset transactions cannot be securities transactions.

The complaint should also be dismissed because plaintiffs have not alleged facts sufficient to grant the extraordinary relief they request under the DJA. To support their request for a declaration that "secondary-market sales of digital assets like the ones that LEJILEX intends to facilitate

---

[3] The Fifth Circuit's decision in *Braidwood Management, Inc. v. EEOC*, cited in the complaint (¶ 92), is not to the contrary. 70 F.4th 914 (5th Cir. 2023). The Fifth Circuit found that "so long as the defendant in a declaratory judgment suit can sue the plaintiff for an action the defendant is responsible for (within the scope of the proposed cause of action), the independent cause of action required for a declaratory judgment claim exists." *Id.* at 932. The Fifth Circuit then concluded that a "proper cause of action" underlay the plaintiffs' requests for relief under the DJA. *Id.* at 933. But those requests for relief were based on pleaded causes of action that were, in turn, premised on concrete circumstances that had already occurred and that could have given rise to EEOC enforcement actions. Specifically, the *Braidwood* plaintiffs asked the court to declare that "Title VII allows employers to discriminate against bisexuals, so long as the employer regards bisexual behavior or orientation as equally unacceptable in a man or a woman" and that "Title VII allows employers to refuse to employ individuals who engage in homosexual or transgender behavior, so long as they do so according to rules of conduct that apply equally to both sexes and would lead to the same result if the employee's biological sex were different." Plaintiffs' Fourth Amended Class Action Complaint ¶¶ 64, 67, *Bear Creek Bible Church v. EEOC*, No. 4:18-cv-00824 (N.D. Tex. filed June 17, 2021). Here, by contrast, plaintiffs' requested relief does not address concrete circumstances that could give rise to Commission enforcement actions.

through the Legit.Exchange" cannot be "sales of securities" as defined by the federal securities laws, (Compl. ¶ 94), plaintiffs would need to allege facts demonstrating that, as a matter of law, digital-asset transactions cannot be securities transactions regardless of the circumstances, including as to assets that fit within the "digital asset" category but may not yet exist. They have not done so. Nor could plaintiffs possibly satisfy this burden because decades of binding caselaw establishes that whether the offers and sales of particular assets are securities transactions requires a facts-and-circumstances analysis that turns on the features of the transactions at issue.

### 1. Whether a digital-asset transaction is a securities transaction depends on its facts and circumstances.

The federal securities laws define "security" broadly to encompass "virtually any instrument that might be sold as an investment." *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (cleaned up); *see also SEC v. Ralston Purina Co.*, 346 U.S. 119, 124-26 (1953); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 847-48 (1975); *Lorenzo v. SEC*, 587 U.S. 71, 1102-03 (2019). "In defining the scope of the market that it wished to regulate, Congress painted with a broad brush." *Reves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990) (articulating a test for determining whether a "note" is a "security"). The Supreme Court explained that "'the task has fallen to the [Commission], the body charged with administering the Securities Acts, and ultimately the federal courts to decide which of the myriad financial transactions in our society come within the coverage of these statutes.'" *Id.*, quoting *United Hous. Found.*, 412 U.S. at 848.

The statutory definition of "security" includes the term "investment contract." *See* 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). As the Supreme Court explained in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298-99. Plaintiffs acknowledge that *Howey* is the controlling test for determining whether any asset, including a digital asset, is an "investment contract," and they do not

allege that courts (or the Commission) have erred in concluding that *Howey* applies to determine whether digital-asset transactions are securities transactions.  *E.g.*, Compl. ¶¶ 22-28, 65-76.

In making that call under *Howey*, "[f]orm [is] disregarded for substance" and "emphasis [is] placed upon [the] economic reality" of the transaction.  328 U.S. at 298.  This approach "permits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance" of securities and properly "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  *Id.* at 299; *see also SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) ("While Congress defined the term 'security,' it left it to the courts to define the term 'investment contract.'  In *Howey*, the Supreme Court did exactly that and developed a flexible test for determining whether an investment contract qualifies as a security * * * .") (cleaned up). This approach requires courts to consider transaction-specific facts and circumstances, including, for example, the roles played by investors and promoters, *see Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 190 (5th Cir. 2010), and the extent to which investors are dependent on the promoter's expertise, *see In re Living Benefits Asset Mgmt., L.L.C.*, 916 F.3d 528, 536 (5th Cir. 2019).

Courts have applied this approach for decades to the facts and circumstances of a wide variety of transactions.  In *Howey*, for example, the Supreme Court concluded that offers and sales of orange-tree tracts, which could be sold as real estate or commodities, were offers and sales of investment contracts under the facts and circumstances presented.  328 U.S. at 298-301.  The Court considered that the offer was of an "opportunity to contribute money and to share in the profits of a large citrus fruit enterprise managed and partly owned" by the offerors; that the offer was made to investors who, based on their distant residences and lack of farming experience, had "no desire to occupy the land or develop it themselves"; and that the investors were "attracted solely by the prospects of a return on their investment."  *Id.* at 299-300.  In *Edwards*, the Court concluded that

payphone sale-and-leaseback arrangements were investment contracts based on the facts and circumstances of the transactions, including that "[p]urchasers were not involved in the day-to-day operation of the payphones" and the seller made "representations of investment income." 540 U.S. at 391, 393-97; *see also SEC v. SG Ltd.*, 265 F.3d 42, 44, 48-55 (1st Cir. 2001) ("virtual shares in an enterprise existing only in cyberspace"); *SEC v. Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 581-85 (2d Cir. 1982) (franchising); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 478-86 (5th Cir. 1974) (multi-level marketing scheme); *Cont'l Mktg. Corp. v. SEC*, 387 F.2d 466, 469-71 (10th Cir. 1967) (animal breeding enterprise).

The complaint's request that this Court classify all transactions involving a particular type of asset as falling outside the definition of an investment contract does not accord with this analytical framework. *Howey*, for example, did not declare that all sales of orange tracts were sales of investment contracts. And cases applying *Howey* have rejected such a categorical approach. In *SEC v. Merchant Capital LLC*, 483 F.3d 747 (11th Cir. 2007), for example, the Eleventh Circuit noted that while a "general partnership interest is presumed not to be an investment contract," a "'scheme which sells investments to inexperienced and unknowledgeable members of the general public cannot escape the reach of the securities laws merely by labeling itself a general partnership or joint venture.'" *Id.* at 755, quoting *Williamson v. Tucker*, 645 F.2d 404, 423 (5th Cir. 1981). "[C]onsistent with the substance over form principle of *Howey*," the Eleventh Circuit, relying on Fifth Circuit precedent, observed that the presence of certain factors *could* render "a general partnership interest an investment contract," even though such interests do not universally constitute securities. *Id.*

Moreover, courts have reached different conclusions with respect to transactions involving similar assets based upon the economic realities of the transactions. For instance, whereas in *SEC v. Life Partners, Inc.*, 87 F.3d 536, 545-56, 548 (D.C. Cir. 1996), the court concluded that certain investments in life insurance proceeds were not offered and sold as investment contracts under

14

*Howey* because the promoter's activities were ministerial, the court in *SEC v. Tyler*, 2002 WL 32538418, at *5-6 (N.D. Tex. Feb. 21, 2002), concluded that similar investments *were* offered and sold as investment contracts under *Howey* because the promoter's managerial activities were part of the investment inducement.  And whereas in *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79-80 (9th Cir. 1980) (per curiam), the court concluded that sale and custodial arrangements for silver bars were not investment contracts under *Howey* because no asset pooling occurred, in *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 439-40 (E.D.N.Y. 1987), the court concluded that similar investments were offered and sold as investment contracts under *Howey* because pooling occurred.

　　In recent years, numerous courts have applied *Howey* in deciding whether the federal securities laws reach cover offers and sales of digital assets.  *E.g.*, *In re Ripple Labs, Inc. Litig.*, No. 18-cv-06753, 2024 WL 3074379, at *6-11 (N.D. Cal. June 20, 2024); *SEC v. Balina*, No. 22-cv-00950, 2024 WL 2332965, at *8-11 (W.D. Tex. May 22, 2024); *SEC v. Coinbase, Inc.*, No. 23-cv-4738, 2024 WL 1304037, at *20-25 (S.D.N.Y. Mar. 27, 2024); *SEC v. Wahi*, No. 22-cv-01009, 2024 WL 896148, at *4-7 (W.D. Wash. Mar. 1, 2024); *SEC v. Terraform Labs Pte. Ltd.*, No. 23-cv-1346, 2023 WL 8944860, at *12-15 (S.D.N.Y. Dec. 28, 2023); *SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 192-98 (S.D.N.Y. 2023); *SEC v. Arbitrade Ltd.*, 668 F. Supp. 3d 1290, 1300-02 (S.D. Fla. 2023); *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211, 216-21 (D.N.H. 2022), *appeal dismissed*, No. 23-1743 (1st Cir. Oct. 23, 2023); *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 323-31 (S.D.N.Y. 2023); *SEC v. NAC Found., LLC*, 512 F. Supp. 3d 988, 995-97 (N.D. Cal. 2021); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177-80 (S.D.N.Y. 2020); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 367-79 (S.D.N.Y. 2020), *appeal withdrawn*, No. 20-1076, 2020 WL 3467671 (2d Cir. May 22, 2020); *SEC v. Nat. Diamonds Inv. Co.*, No. 19-cv-80633, 2019 WL 13277296, at *8-10 (S.D. Fla. May 28, 2019); *SEC v. Blockvest, LLC*, No. 18-cv-2287, 2019 WL 625163, at *5-7 (S.D. Cal. Feb. 14, 2019).  In these cases, no court has issued (or been asked by the Commission to issue) a ruling that *all* digital-asset

transactions are subject to the federal securities laws.  Rather, these cases highlight—through the Commission's allegations and evidence, and the resulting judicial opinions—the intensively factual nature of the "investment contract" inquiry.  Courts do not "consider the crypto-asset in isolation," but instead "evaluate whether the crypto-assets and the 'full set of contracts, expectations, and understandings' surrounding its sales and distribution—frequently referred to using the shorthand 'ecosystem'—amount to an investment contract." *Coinbase*, 2024 WL 1304037, at *20, quoting *Telegram*, 448 F. Supp.3d at 379.

Take *Coinbase*, for instance.  Applying this transaction-by-transaction mode of analysis, the *Coinbase* court decided that the Commission had sufficiently alleged that particular digital-asset transactions were securities transactions.  *Id.* at *20-25.  In so ruling, the court applied the *Howey* framework to factual allegations regarding the transactions at issue.  The court looked to allegations that "token issuers, developers, and promoters frequently represented that proceeds from crypto-asset sales would be pooled to further develop the tokens' ecosystems and promised that these improvements would benefit all token holders by increasing the value of the tokens themselves." *Id.* at *21.  And the court looked to allegations that "issuers and promoters of the [c]rypto-[a]ssets—through websites, social media posts, investor materials, town halls, and other fora—repeatedly encouraged investors to purchase tokens by advertising the ways in which their technical and entrepreneurial efforts would be used to improve the value of the asset, and continued to do so long after the tokens were made available for trading on the secondary market." *Id.* at *22.  Concluding that "[the] specific factual allegations * * * support the SEC's claim that investors in a common enterprise were motivated to purchase certain crypto-assets based on an expectation of profits solely derived from the efforts of others," the court found "that the SEC ha[d] adequately pleaded that Coinbase customers engaged in transactions involving the [c]rypto-[a]ssets that amounted to 'investment contracts.'" *Id.* at *23.  Thus, the court found that while "the 'crypto' nomenclature may

be of recent vintage," the "challenged transactions fall comfortably within the framework that courts have used to identify securities for nearly eighty years." *Id.* at *1.

There are other examples.  In *Terraform Labs*, the court ruled on summary judgment that specific digital-asset transactions were securities transactions based on its application of the *Howey* framework to evidence regarding the transactions at issue.  2023 WL 8944860, at *12-15.  The court analyzed the promotional efforts underlying the sales of the assets, the pooling of investments, and efforts by issuers that benefited investors.  *Id.*  And in *LBRY*, the court similarly applied the *Howey* framework to evidence regarding the specific digital-asset transactions at issue and ruled on summary judgment that they were securities transactions.  639 F. Supp. 3d at 222.  The court reviewed evidence regarding, for example, the issuer's representations to potential purchasers, the issuer's business model, and the purported consumptive use of the digital asset.  *Id.* at 216-21.

### 2.   The complaint fails to allege facts demonstrating that, as a matter of law, a digital-asset transaction cannot be a securities transaction.

The complaint is erroneously premised on this Court being able to categorically determine that no digital-asset transaction—no matter the facts and circumstances—can be a securities transaction.  To reiterate, the *Howey* framework, which the complaint concedes is applicable and binding, requires an analysis of a transaction's facts and circumstances.  But the complaint lacks factual allegations supporting a ruling that, as a matter of law, no digital-asset transaction can be a securities transaction and that therefore the Commission should be enjoined from bringing enforcement actions based on digital-asset transactions.

For example, the complaint does not identify specific digital assets—it seeks relief as to a universe of digital assets that are "like the ones" at issue in certain Commission enforcement cases, which presumably would encompass even certain digital assets that do not yet exist.  Compl. ¶ 94.  Moreover, the complaint does not allege facts sufficient to establish that even one digital-asset transaction is not a securities transaction under the federal securities laws.  And the complaint seeks

17

relief for CFAT members based on their "planned or ongoing participation in the digital asset industry" (*id.* ¶ 89) but fails to identify those CFAT members, their "participation in the digital asset industry," or the digital assets at issue.

In place of factual allegations, the complaint offers legal conclusions. The complaint alleges that "the digital assets LEJILEX will list[] are simply standalone assets that do not" "represent[] a stake in the enterprise that created it" or "carr[y] with it an obligation on the part of its creator to manage that enterprise for the asset owner's benefit and share resulting profits." *Id.* ¶ 69; *see, e.g., id.* ¶¶ 71-73. But legal conclusions do not suffice to state a claim. *See supra* at 5; *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (cleaned up). The complaint's contention that the digital-asset transactions at issue will not be securities transactions is little more than *ipse dixit*, and because the complaint does not plead "enough facts to state a claim to relief that is plausible on its face," the complaint should be dismissed. *Bell Atl. Corp*, 550 U.S. at 570.

Beyond just lacking factual allegations, the complaint is self-defeating. Plaintiffs recognize the differences among digital assets; they claim that digital assets are "wildly diverse" (Compl. ¶ 54) and that some do not have "typical" characteristics (*id.* ¶ 68). And they acknowledge that digital-asset transactions *can be* securities transactions, noting that it is "certainly possible" for digital-asset transactions to be securities transactions, even if, in plaintiffs' estimation, such instances are "exceedingly rare." *Id.* ¶¶ 38, 39 (emphasis omitted); *see also id.* ¶¶ 68, 69, 74, 75.

Attempting to sidestep this concession, the complaint alleges that digital assets that could be the subject of securities transactions will not be listed on LEJILEX's platform, *id.* ¶ 69, but that attempt fails. To be sure, not every digital-asset transaction is necessarily a securities transaction. *See* Dkt. 31 at 15; *see also IMVU, Inc.*, SEC Staff No-Action Letter, 2020 WL 12949519 (Nov. 19, 2020) (Commission staff no-action letter regarding particular digital asset); *Pocketful of Quarters, Inc.*, SEC

Staff No-Action Letter, 2019 WL 8128104 (July 25, 2019) (same); *Turnkey Jet, Inc.*, SEC Staff No-Action Letter, 2019 WL 1554004 (Apr. 3, 2019) (same).  But asserting that LEJILEX will limit its platform to digital-asset transactions that are not securities transactions only begs the question of what those transactions will be.  Moreover, the relief sought by the complaint is not limited to the digital assets that will be made available for trading on LEJILEX's platform but also includes the digital assets involved in the "planned or ongoing participation in the digital asset industry" of CFAT's other members, who are unidentified.  Compl. ¶ 89.

> ### 3. The complaint fails to allege facts demonstrating that, as a matter of law, a secondary-market digital-asset transaction cannot be a securities transaction.

The broad relief requested by plaintiffs is not limited to secondary-market transactions involving digital assets.  *See, e.g.*, Compl. ¶ 94 (requesting that this Court "[e]njoin the SEC from bringing an enforcement action against LEJILEX or similarly situated CFAT members premised on *any* purported failure to register as securities exchanges, brokers, or clearing agencies") (emphasis added).  However, even if the allegations were narrower, and plaintiffs sought less sweeping relief, the complaint would still suffer from fatal pleading deficiencies regarding the secondary-market digital-asset transactions invoked by plaintiffs.

Plaintiffs argue that most secondary-market digital-asset transactions are not securities transactions because "secondary-market transactions simply transfer ownership of a digital asset from one party to another" and "do not * * * entail any ongoing obligation by the [asset] creator (or anyone else) to manage any common enterprise for the secondary-market buyer's benefit."  *Id.* ¶¶ 71-72.  But these legal allegations are foreclosed by Supreme Court precedent, under which a digital-asset transaction can be a securities transaction even absent such an "ongoing obligation."

Even before *Howey*, the Court concluded that the sale of a leasehold interest was the sale of an investment contract while explicitly holding that it was "unnecessary to determine" whether the

purchaser had acquired "a legal right to compel" the promoter to undertake efforts under state law. *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 349 (1943). Then in *Howey*, the Court addressed a situation where all investors purchased tracts of orange groves pursuant to land sale agreements, and all were offered, but only some entered into, separate service contracts whereby the defendants committed under state law to undertake efforts to cultivate the tracts for the investors' benefit. 328 U.S. at 295-99. The Court held that *all* investors had been offered investment contracts and that the lower courts had erred by "treat[ing] the contracts and deeds as separate transactions involving no more than an ordinary real estate sale and an agreement by the seller to manage the property for the buyer." *Id.* at 297-98, 300-01. Rather, the Court explained, the written contracts only "evidenced" the relationships, and the legal transfer of rights was "purely incidental." *Id.* at 300; *see Coinbase*, 2024 WL 1304037, at *24 ("In other words, the [*Howey*] Court found that while the presence of these formalities was instructive, it was not dispositive."); *see also, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 233-34, 240 (2d Cir. 1985) (holding that a promoter offered and sold investment contracts based in part on promoter's "implicit promise to maintain its marketing efforts").

In applying *Howey*, courts have "consistently declined invitations by defendants in the cryptocurrency industry" to impose the sort of "ongoing obligation" requirement sought by plaintiffs because such "a requirement * * * is not formal, but formalistic, and cannot be fairly read into the *Howey* test." *Coinbase*, 2024 WL 1304037, at *19, *24. As the *Terraform* court explained, by "stating that 'transaction[s]' and 'scheme[s]'—and not just 'contract[s]'—qualify as investment contracts, the Supreme Court made clear in *Howey* that Congress did not intend the term to apply only where transacting parties had drawn up a technically valid written or oral contract under state law." 684 F. Supp. 3d at 193, quoting *Howey*, 328 U.S. at 298-99. Every court that has addressed some version of the "ongoing obligation" requirement has rejected it. *See, e.g., Ripple*, 682 F. Supp.

3d at 322 (refusing to require "the formal imposition of post-sale obligations on the promoter or the grant to an investor of a right to share in profits"); *Kik Interactive*, 492 F. Supp. 3d at 178 ("[A]n ongoing contractual obligation is not a necessary requirement for a finding of a common enterprise.").

At bottom, plaintiffs incorrectly claim that secondary-market digital-asset transactions can never be securities transactions. But this attempt to distinguish between initial and secondary-market transactions finds no support in the federal securities laws, which use the same term—"investment contract"—to define "security" both when someone "sell[s]" or "offer[s] to sell" the instrument, 15 U.S.C. § 77e(a), (c), and when someone "effect[s] any transaction" utilizing the facility of an "exchange," *id.* § 78e. *See Coinbase*, 2024 WL 1304037, at *23 ("[T]he text of the federal securities laws does not distinguish the nature of the instrument based on its manner of sale."). Indeed, "the risk of manipulation, fraud, and other abuses that the securities laws seek to prevent can be found in both markets," and "there is little logic to the distinction * * * between the reasonable expectations of investors who buy directly from an issuer and those who buy on the secondary market" because an investor "in either setting is attracted by the promises and offers made by issuers to the investing public." *Id.* And "*Howey* does not recognize such a distinction as a necessary element in its test of whether a transaction constitutes an investment contract." *Id.* For these reasons, courts have "decline[d] to draw [such] a distinction" between initial and secondary-market transactions. *Terraform*, 684 F. Supp. 3d at 197; *see Coinbase*, 2024 WL 1304037, at *23; *Ripple*, 2024 WL 3074379, at *7. Thus "whether a particular transaction in a crypto-asset amounts to an investment contract does not necessarily turn on whether an investor bought [the asset] directly

21

from an issuer or, instead, in a secondary market transaction." *Coinbase*, 2024 WL 1304037, at *23. [4]

Instead, it turns on the facts and circumstances of the transaction.

## III.   This Court should exercise its discretion to dismiss this lawsuit.

Even if plaintiffs' request for declaratory relief were justiciable and this Court had authority to grant the requested relief, this Court should exercise its discretion to dismiss the complaint. "By the [DJA], Congress * * * created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The statute "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007), quoting *Wilton*, 515 U.S. at 286. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, * * * to dismiss an action seeking a declaratory judgment." *Wilton*, 515 U.S. at 288. A court may, for example, dismiss the complaint based on "the usefulness of the declaratory judgment remedy" or "the fitness of the case for resolution." *Medimmune*, 549 U.S. at 136. That is because "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

The Fifth Circuit has identified "seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action," *Sherwin-Williams*, 343 F.3d at 388, several of which militate for dismissal here (and others of which do not apply here). The factors include

---

[4] Even when a court reached different conclusions about initial and secondary-market sales, it did so after "examin[ing] the totality of circumstances surrounding [the] different transactions and schemes" through "an extensive * * * factual record and detailed expert reports," including "over 1,600 purported facts" and "over 900 exhibits." *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832, 2023 WL 6445969, at *3 (S.D.N.Y. Oct. 3, 2023) (denying interlocutory review). That court, which explicitly rejected the sort of "ongoing obligation" requirement sought by plaintiffs, explained that "[w]hether a secondary market sale constitutes an offer or sale of an investment contract * * * depend[s] on the totality of circumstances and the economic reality of that specific contract, transaction, or scheme." *Ripple*, 682 F. Supp. 3d at 329 n.16.

"whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant," "whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist," and "whether retaining the lawsuit would serve the purposes of judicial economy." *Id.*, quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir.1994). These factors are intended to capture three "aspects of * * * analysis: "the proper allocation of decision-making" between courts; "fairness," or "distinguish[ing] between legitimate and improper reasons for forum selection"; and "efficiency," or "avoid[ing] duplicative or piecemeal litigation where possible." *Id.* at 390-91.

Both fairness and efficiency weigh in favor of dismissing plaintiffs' complaint because "plaintiff[s] [are] engaged in forum shopping in bringing the suit," plaintiffs allege that they filed this suit "in anticipation of a lawsuit filed by the [Commission]," and there are "possible inequities in allowing the declaratory plaintiff[s] to gain precedence in time or to change forums exist." *Id.* at 388. As explained in defendants' pending motion to dismiss (Dkt. 31), the complaint does not allege that the Commission has taken any position regarding LEJILEX, much less determined whether LEJILEX's planned digital-asset trading platform would be an unregistered securities exchange or whether LEJILEX would be a broker or a clearing agency. This DJA action seeks to force the Commission to take a position regarding the legality of LEJILEX's planned operations through the defense of district court litigation, but the Commission would normally assess that position through its investigatory processes. It is inefficient and improper to effectively force the Commission to bring a case against LEJILEX from the position of a defendant in a declaratory judgment action, circumventing a prosecutorial process that is not alleged to have even commenced, let alone come close to fruition. *See, e.g.*, *Agri-Trans Corp. v. Gladders Barge Line, Inc.*, 721 F.2d 1005, 1011 (5th Cir. 1983) ("A declaratory judgment action should not be used to circumvent the usual progression of administrative determination and judicial review."); *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 895 (5th Cir. 1978) (upholding dismissal of a DJA claim based on a "detailed framework

for regulatory enforcement and for orderly review of the various stages of enforcement"); *see also Texas Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 159 (5th Cir. 1996) ("Appellants cannot circumvent the procedure provided by [statute] by characterizing their request * * * as a request for a declaration of their contract rights * * * .").

Furthermore, permitting this action to proceed would threaten to upset the proper allocation of decision-making among federal courts. To reiterate defendants' pending motion to dismiss (Dkt. 31), in asking this Court to declare that "secondary-market sales of digital assets * * * are not sales of securities," Compl. ¶ 94, plaintiffs refer to specific digital assets that are at issue in pending district court Commission enforcement actions. *See id.* ¶ 61. Moreover, while the complaint is silent as to CFAT's members beyond LEJILEX, in asking this Court to enjoin the Commission from bringing enforcement actions against "CFAT members," *id.* ¶ 94, plaintiffs are potentially asking this Court to enjoin future, and perhaps ongoing, enforcement actions in other courts. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA*, 751 F.2d 721, 728 (5th Cir. 1985); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (applying this "principle[] of comity"). That requires federal courts to "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar.*, 751 F.2d at 729.

**IV.    Alternatively, the grant should grant summary judgment for the defendants.**

To the extent this Court determines that it has subject-matter jurisdiction and that the complaint states a claim, and then exercises its discretion to address the request for declaratory relief, it should grant a summary judgment in defendants' favor. For the reasons explained above, plaintiffs have not demonstrated an entitlement to relief under the DJA because they have not

24

proven—and cannot prove—that a digital-asset transaction cannot be a securities transaction, as a matter of law, under the test for an "investment contract" laid out in *Howey*.

## CONCLUSION

The complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim.  Alternatively, summary judgment should be granted in the defendants' favor.

Dated: June 26, 2024                                    Respectfully submitted,

/s/ *Jason J. Rose*                                         Jeffrey A. Berger*
Jason J. Rose                                              Illinois Bar No. 6282511
Texas Bar No. 24007946                          Ezekiel L. Hill*
Securities and Exchange Commission     D.C. Bar No. 1684647
801 Cherry Street, Suite 1900                  David D. Lisitza*
Fort Worth, Texas 76102                          California Bar No. 225824
(817) 978-1408 (phone)                            Securities and Exchange Commission
(817) 978-4927 (facsimile)                       100 F Street NE
rosej@sec.gov                                          Washington, DC 20549
                                                               (202) 551-5100 (phone)
                                                               bergerje@sec.gov
                                                               hillez@sec.gov
                                                               lisitzad@sec.gov

*Counsel for Defendants*

* Not admitted in N.D. Tex.  *Pro hac vice* motions pending.

25

## CERTIFICATE OF SERVICE

I affirm that on June 26, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Fort Worth Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jason J. Rose*
Jason J. Rose