**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

LEJILEX; CRYPTO FREEDOM ALLIANCE OF
TEXAS,

                                Plaintiffs,

v.

SECURITIES AND EXCHANGE                   C.A. No. 4:24-cv-00168-O
COMMISSION; ERIC R. WERNER; GARY
GENSLER; CAROLINE A. CRENSHAW; JAIME
E. LIZARRAGA; HESTER M. PEIRCE; and
MARK T. UYEDA, in their official capacities,

                                Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR (1) FIRST MOTION**
**TO DISMISS AND (2) SECOND MOTION TO DISMISS OR,**
**<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................2

I.      This action is not justiciable because this Court lacks jurisdiction ...............................2

        A.   This Court lacks jurisdiction because sovereign immunity bars this lawsuit .......................2

        B.   This Court lacks jurisdiction because plaintiffs' claims are not ripe and plaintiffs
             lack standing ..................................................................................................................10

        C.   This Court lacks jurisdiction because this lawsuit is an improper programmatic
             challenge ........................................................................................................................17

II.     The complaint fails to state a claim authorizing the requested relief...........................19

        A.   The complaint fails to allege a cause of action .....................................................19

        B.   The complaint does not allege facts demonstrating, as a matter of law, that
             digital-asset transactions cannot be securities transactions absent ongoing
             contractual obligations to investors .............................................................................21

III.    This Court should exercise its discretion to dismiss this lawsuit .................................24

IV.     Alternatively, this Court should grant summary judgment for defendants .............................25

CONCLUSION.........................................................................................................................25

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Agri-Trans Corp. v. Gladders Barge Line, Inc.,*
   721 F.2d 1005 (5th Cir. 1983) ...................................................................................24

*Alabama-Coushatta Tribe of Tex. v. United States,*
   757 F.3d 484 (5th Cir. 2014) .................................................................................6, 8

*Am. Airlines, Inc. v. Herman,*
   176 F.3d 283 (5th Cir. 1999) ..................................................................................10

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) ................................................................................................20

*Ass'n of Irritated Residents v. EPA,*
   494 F.3d 1027 (D.C. Cir. 2007) ................................................................................4

*Austin v. Countrywide Home Loans, Inc.,*
   No. 07-cv-15127, 2008 WL 3833269 (E.D. Mich. Aug. 13, 2008) ...........................4

*Bear Creek Bible Church v. EEOC,*
   571 F. Supp. 3d 571 (N.D. Tex. 2021)....................................... 4, 6, 7, 10, 14, 15, 16, 18

*Blankenship v. Buenger,*
   653 F. App'x 330 (5th Cir. 2016) ............................................................................15

*Braidwood Mgmt., Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ....................................... 4, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18

*Calderon v. Ashmus,*
   523 U.S. 740 (1998) ................................................................................................13

*Cent. & S. W. Servs., Inc. v. EPA,*
   220 F.3d 683 (5th Cir. 2000) ............................................................................. 16-17

*Ciba-Geigy Corp. v. EPA,*
   801 F.2d 430 (D.C. Cir. 1986) ................................................................................12

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)...................................................................................................17

*Consumer Data Indus. Ass'n v. Texas ex rel. Paxton,*
   No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023) .....................................14

*Cronin v. FAA,*
   73 F.3d 1126 (D.C. Cir. 1996)................................................................................13

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.,*
   45 F.4th 846 (5th Cir. 2022) ...................................................................................11

*Dow Chem. v. EPA,*
   832 F.2d 319 (5th Cir. 1987) ...........................................................................12

*Finazzo v. SEC,*
   No. 08-cv-2176, 2008 WL 3521351 (S.D.N.Y. Aug. 8, 2008)..............................4

*Flight Training Int'l, Inc. v. FAA,*
   58 F.4th 234 (5th Cir. 2023) ................................................................................6

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) .........................................................................................20-21

*FTC v. Standard Oil Co. of Cal.,*
   449 U.S. 232 (1980) ..............................................................................................9

*Gentile v. SEC,*
   974 F.3d 311 (3d Cir. 2020)...............................................................................3, 4

*GoJet Airlines, LLC v. FAA,*
   743 F.3d 1168 (8th Cir. 2014) ...............................................................................4

*Gulf Restoration Network v. McCarthy,*
   783 F.3d 227 (5th Cir. 2015) .................................................................................2

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ...............................................................................................3

*Hodl Law, PLLC v. SEC,*
   No. 23-55810, 2024 WL 3898607 (9th Cir. Aug. 22, 2024)............................5, 12

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) .......................................................................... 8, 9, 18, 19

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ...............................................................................................4

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004)..................................................................................................9

*Paxton v. Dettelbach,*
   105 F.4th 708 (5th Cir. 2024) ..............................................................................15

*People's Nat'l Bank v. OCC,*
   362 F.3d 333 (5th Cir. 2004) .................................................................................9

*Pros. & Patients for Customized Care v. Shalala,*
   56 F.3d 592 (5th Cir. 1995)....................................................................................6

*Saline Parents v. Garland,*
   88 F.4th 298 (D.C. Cir. 2023)............................................................................. 14

*SEC v. Binance Holdings Ltd.*,
  No. 23-cv-1599, 2024 WL 3225974 (D.D.C. June 28, 2024) ............................................23

*SEC v. C. M. Joiner Leasing Corp.*,
  320 U.S. 344 (1943) ..........................................................................................................23

*SEC v. Coinbase, Inc.*,
  No. 23-cv-4738, 2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024)........................................23

*SEC v. Finazzo*,
  360 F. App'x 169 (2d Cir. 2009) ........................................................................................4

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) .....................................................................................1, 22, 23, 25

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996)............................................................................................................21

*Sierra Club v. Peterson*,
  228 F.3d 559 (5th Cir. 2000) ..............................................................................................9

*Teva Pharms. USA, Inc. v. Sebelius*,
  595 F.3d 1303 (D.C. Cir. 2010)........................................................................................16

*Texas v. United States*,
  497 F.3d 491 (5th Cir. 2007) ......................................................................................10-11

*Trump v. New York*,
  592 U.S. 125 (2020) ..........................................................................................................11

*United States v. Nixon*,
  418 U.S. 683 (1974) ............................................................................................................4

*United States v. Texas*,
  97 F.4th 268 (5th Cir. 2024) .............................................................................................20

*Walmart, Inc. v. DOJ*,
  21 F.4th 300 (5th Cir. 2021) ...........................................................5, 6, 8, 10, 11, 13, 15

## <u>Statutes</u>

<u>Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*</u>

  5 U.S.C. § 551(13) .............................................................................................................7

  5 U.S.C. § 553(10)(C) ........................................................................................................7

  5 U.S.C. § 701(a)(2) ....................................................................................................2, 3, 4

  5 U.S.C. § 702 ...........................................................................................................6, 7, 10

  5 U.S.C. § 704 ............................................................................................................8, 9, 11

  5 U.S.C. § 706(2)(C) ..........................................................................................................9

Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*

    Section 20(b), 15 U.S.C. § 77t(b) ........................................................................... 9

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

    Section 5, 15 U.S.C. § 78e ...................................................................................... 8

    Section 15(a), 15 U.S.C. § 78o(a) ........................................................................... 8

    Section 17A(b)(1), 15 U.S.C. § 78q-1(b)(1) ........................................................... 9

    Section 21(a)(1), 15 U.S.C. § 78u(a)(1) ................................................................. 3

    Section 21(d)(1), 15 U.S.C. § 78u(d)(1) .............................................................. 3, 9

## **Regulations**

17 C.F.R. § 200.10 ......................................................................................................... 5

17 C.F.R. § 200.41 ......................................................................................................... 5

17 C.F.R. § 200.735-4(d)(2)(ii)(A) ................................................................................ 5

## **Other**

Complaint, *SEC v. Coinbase, Inc.*, No. 23-cv-04738 (S.D.N.Y. filed June 6, 2023) ............................... 13

Complaint, *SEC v. Payward, Inc.*, No. 23-cv-06003 (N.D. Cal. filed Nov. 20, 2023) ........................... 13

Gary Gensler, Chair, SEC, *Kennedy and Crypto* (Sept. 8, 2022) ...................................................... 5

Order, *Consensys Software, Inc. v. SEC*,
    No. 24-cv-00369 (N.D. Tex. Sept. 19, 2024), Dkt. 57 ...................................... 11, 12, 15

U.S. Const. art. III ............................................................................. 1, 2, 10, 11, 16, 18

## INTRODUCTION

Plaintiffs' opposition underscores that their lawsuit is an improper request that this Court veer outside its constitutional role and declare that offers and sales of digital assets in secondary markets can never be securities transactions absent ongoing contractual obligations to investors. But this Court cannot grant that relief consistent with Article III, principles of sovereign immunity, and the Administrative Procedure Act (APA) because plaintiffs have not challenged any agency action—much less final agency action—by the Securities and Exchange Commission, pointing instead only to the possibility that the Commission could investigate or bring an enforcement action at some unknown time in the future. And beyond the complaint's jurisdictional flaws, plaintiffs have not stated a claim—nor could they prevail on the merits—because their legal theory is contradicted by *Howey* and its progeny.

Plaintiffs seek broad relief based on abstract factual allegations. They do not challenge any agency action; they do not claim that the Commission has taken any enforcement steps regarding LEJILEX, whose planned trading platform is not yet operational but supposedly will permit trading in an unknown universe of digital assets; and they do not identify any Commission rule, policy, or guidance that they claim to be invalid. Rather, plaintiffs assert that they fear a potential future Commission enforcement action against LEJILEX (or another CFAT member) because the Commission has brought enforcement actions against other defendants based on different facts. But those enforcement actions do not give rise to a justiciable case and controversy here, and plaintiffs fail to identify final agency action that could render their claims fit for judicial review.

Even if this Court had jurisdiction, the fundamental legal premise of plaintiffs' lawsuit is wrong. The Supreme Court has never required an ongoing contractual obligation to the investor as a prerequisite to an investment contract, and plaintiffs' argument for such a requirement has been refuted by every court to have considered it, including in cases involving digital assets. Nor can the

1

major questions doctrine save plaintiffs' lawsuit.  The doctrine does not apply to Commission enforcement of statutory requirements, including enforcement related to digital assets, and, in any event, an enforcement action against LEJILEX (or another CFAT member) would not present circumstances warranting the doctrine's application.

The complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim, or, alternatively, summary judgment should be granted in defendants' favor.

## ARGUMENT

**I.      This action is not justiciable because this Court lacks jurisdiction.**

Three independent and fatal jurisdictional problems undermine plaintiffs' request for relief: (1) sovereign immunity bars this lawsuit; (2) plaintiffs fail to show ripeness and standing consistent with Article III; and (3) the complaint constitutes an improper programmatic challenge.  Defs.' First Mot. (Dkt. 31) 4-25; Defs.' Second Mot. (Dkt. 38) 6-7; Defs.' Resp. (Dkt. 67) 8-18.  Plaintiffs' opposition fails to demonstrate otherwise.  *See* Pls.' Opp. (Dkt. 70) 6-24, 28-32.

### A.      This Court lacks jurisdiction because sovereign immunity bars this lawsuit.

Because the APA does not waive sovereign immunity for agency actions committed to the Commission's discretion by law, sovereign immunity would bar this lawsuit even if plaintiffs had identified agency action affecting them in a specific way, which they have failed to do.  Defs.' First Mot. 4-11; Defs.' Second Mot. 6-7; Defs.' Resp. 9-10.

1. The APA's sovereign immunity waiver "does not apply" if the challenged "'agency action is committed to agency discretion by law.'"  *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 232-33 (5th Cir. 2015), quoting 5 U.S.C. § 701(a)(2).  And Congress expressly committed Commission decisions regarding enforcement actions—including whether to investigate and, ultimately, whether to file an enforcement action—to the Commission's discretion by law, stating that "[w]henever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices

constituting a violation * * * , it may in its discretion bring an action."  15 U.S.C. § 78u(d)(1); *see also id.* § 78u(a)(1) (authorizing the Commission to investigate violations "in its discretion").  At most, and by their own admission, plaintiffs are challenging hypothetical future Commission decisions to bring enforcement actions.  *See, e.g.*, Compl. ¶ 93 ("LEJILEX and CFAT * * * seek declaratory and injunctive relief to prevent the SEC from subjecting LEJILEX and CFAT's members to unlawful enforcement actions.").  Thus, the APA's waiver of sovereign immunity cannot apply and this Court lacks subject-matter jurisdiction.  Defs.' First Mot. 10-11; Defs.' Second Mot. 6-7; Defs.' Resp. 10.

While plaintiffs concede that the Commission has "substantial discretion to decide which investigations and enforcement actions to pursue," they claim that Section 701(a)(2) does not "prevent judicial review of whether a threatened enforcement action exceeds [the Commission's] authority."  Pls.' Opp. 23.  But plaintiffs—who do not identify a single case supporting that claim— fail to explain why Congress would have precluded judicial review when the Commission makes the discretionary decision to file an enforcement action but permitted judicial review when the Commission has not yet filed an enforcement action, or even taken preliminary steps that could lead to the filing of an enforcement action, such as beginning an investigation.  *See Gentile v. SEC*, 974 F.3d 311, 319-20 (3d Cir. 2020) ("The exception in § 701(a)(2) pertains to *agency action* that is committed to agency discretion by law, and thus it shields the entirety of an agency action that is committed to agency discretion by law.") (cleaned up).

The cases plaintiffs rely upon do not suggest otherwise.  The part of *Heckler v. Chaney*, 470 U.S. 821 (1985), that they cite says only that when an agency asks a federal court to enforce an order issued by the agency in an administrative proceeding, the *defendant* in that federal court action can challenge the agency's authority to issue the order.  *Id.* at 832.  It does not say that a putative future defendant may sue the agency to challenge a future discretionary decision to bring an enforcement

3

action.  *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

Plaintiffs' reliance on *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021), *Braidwood Management, Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023), and *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), is also unavailing because those cases did not address Section 701(a)(2), much less whether it applies to discretionary enforcement decisions.  When that question is before courts, they conclude that Section 701(a)(2) bars judicial review of agency action committed to agency discretion by law.  *Gentile*, 974 F.3d at 317, 320 (concluding that a challenge "to the SEC's decision to open an investigation" which raised the "question of whether the SEC has legal authority to investigate" was barred by sovereign immunity "because an agency decision to investigate fits within the § 701(a)(2) exception"); *GoJet Airlines, LLC v. FAA*, 743 F.3d 1168, 1173 (8th Cir. 2014) ("[A] federal agency's decision to commence a civil enforcement action is, like the charging decision of a criminal prosecutor, normally deemed to be unreviewable because it is an action committed to agency discretion by law.") (cleaned up); *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030-37 (D.C. Cir. 2007) (concluding that "EPA's exercises of its enforcement discretion are not reviewable" pursuant to Section 701(a)(2)); *see also Austin v. Countrywide Home Loans, Inc.*, No. 07-cv-15127, 2008 WL 3833269, at *8 (E.D. Mich. Aug. 13, 2008) (concluding that "[t]he SEC's decision whether to bring an enforcement action is subject to agency discretion and is consequently unreviewable" pursuant to Section 701(a)(2)); *Finazzo v. SEC*, No. 08-cv-2176, 2008 WL 3521351, at *6 (S.D.N.Y. Aug. 8, 2008) (concluding that Section 701(a)(2) "provides an independent ground on which to find that sovereign immunity has not been waived" such that a court cannot "review the SEC's discretionary decision to commence an enforcement action"), *aff'd*, 360 F. App'x 169 (2d Cir. 2009).

2.  Even if the Commission's decisions to conduct investigations and to file enforcement actions were not committed to its discretion by law, plaintiffs have failed to "identify some 'agency action' affecting [them] in a specific way," which they concede that they must do to rely on the APA's waiver of sovereign immunity.  Pls.' Opp. 18 (cleaned up).

As a threshold matter, plaintiffs do not allege that the Commission has taken any step against LEJILEX, whether investigative or otherwise, or that the Commission staff has had any interaction with LEJILEX at all.  Plaintiffs refer to supposed agency action "in the form of agency statements," but they do not cite any policy statements or interpretive rules adopted by the Commission.  *Id.* at 19.  Similarly, they refer to supposedly "public pronouncements" by the Commission but cite none.  *Id.* at 22 n.2.  Plaintiffs instead cite statements by the Commission's Chair.  *See, e.g.*, Compl. ¶¶ 49, 62.  The Commission, however, acts through a majority vote of a quorum of its five Commissioners, and a statement by the Chair is not an "agency statement[]," much less agency action.  *See* 17 C.F.R. §§ 200.10, 200.41, 200.735-4(d)(2)(ii)(A); *Hodl Law, PLLC v. SEC*, No. 23-55810, 2024 WL 3898607, at *2 (9th Cir. Aug. 22, 2024) (finding public statements that are "not the product of the SEC's formal voting or delegation procedures" are not agency action under the APA); *see also, e.g.*, Gary Gensler, Chair, SEC, *Kennedy and Crypto* (Sept. 8, 2022), https://www.sec.gov/news/speech/gensler-sec-speaks-090822 (cited at Compl. ¶ 49) ("As is customary, I'd like to note my views are my own, and I'm not speaking on behalf of the Commission or SEC staff.").  Plaintiffs' citation of media accounts of such statements (*see, e.g.*, Compl. ¶ 49) is an even weaker attempt to find an "agency statement[]" where none exists.

Plaintiffs also claim supposed agency action "in the form of * * * enforcement actions against other entities."  Pls.' Opp. 19.  But a complaint is not a rule, or otherwise an agency action, because, as plaintiffs concede (*id.* at 22 n.2) a "complaint does not create rights or obligations, nor does it have future effect."  *Walmart, Inc. v. DOJ*, 21 F.4th 300, 308-09 (5th Cir. 2021) (cleaned up).

Rather, it is a request that a district court exercise its jurisdiction to adjudicate liability for an alleged violation of the law and grant the requested relief, not a self-executing action by the agency.  Defs.' First Mot. 7; Defs.' Second Mot. 6; Defs.' Resp. 9.  And plaintiffs' suggestion—in a footnote—that "policy statements reflected in [the Commission's] enforcement proceedings are at a minimum non-substantive rules" is similarly incorrect.  Pls.' Opp. 22 n.2 (cleaned up).  A complaint, which contains allegations against a particular defendant for particular past conduct, is not a "policy statement[]" or any other sort of "non-substantive rule" about future conduct.  *Walmart*, 21 F.4th at 308 (identifying "rules governing internal agency organization or procedures; non-binding agency policy statements; and guidance documents interpreting existing rules" as non-substantive rules).  Such allegations do not "announce[] the agency's tentative intentions for the future."  *Pros. & Patients for Customized Care v. Shalala*, 56 F.3d 592, 596 (5th Cir. 1995) (cleaned up); *see Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 242 (5th Cir. 2023) ("[P]olicy statements * * * are issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power.") (cleaned up).

Moreover, complaints alleging facts about "other entities" (Pls.' Opp. 19) do not affect plaintiffs in "a specific way."  *Walmart*, 21 F.4th at 308 (cleaned up); *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014).  Even if enforcement actions result in judgments against those other entities, they would not result in plaintiffs suffering a legal wrong or being adversely affected within the meaning of Section 702.  Plaintiffs' apparent claim is that by filing an enforcement action, an agency waives its sovereign immunity with respect to anyone else against whom the agency could potentially bring a similar enforcement action.  No case says that.

This Court's decision in *Bear Creek* does not hold otherwise.  The *Bear Creek* plaintiffs challenged the EEOC's interpretation of Title VII and its religious exemption, as reflected in EEOC guidance documents, which the EEOC stood ready to enforce, as demonstrated by an action against

a third party. 571 F. Supp. 3d at 596-97. This Court held that the EEOC guidance documents and the related enforcement action constituted agency action for purposes of Section 702. *Id.* at 599. But this Court did not conclude that an agency's federal court complaint, without more, satisfies the APA definition of "agency action," and here plaintiffs do not—and cannot—point to anything more. Moreover, while in *Bear Creek* this Court found that the plaintiffs had been "adversely affected by the threat of agency action," *id.* (cleaned up), the existence and credibility of that threat depended—at least in part—on the existence of the EEOC guidance documents, for which there is no equivalent here. [1]

Finally, plaintiffs claim—without any supporting authority—that they have identified agency action in the form of "the imminent enforcement action that LEJILEX will face if it engages in the conduct at issue." Pls.' Opp. 22. But this bootstrapping argument—which was not even attempted by the plaintiffs in *Bear Creek* and *Braidwood*—cannot be squared with the APA. No matter how supposedly "imminent" it may be, an unfiled enforcement action is not agency action. Indeed, "agency action" refers to actions that have occurred, not supposedly imminent occurrences. *See* 5 U.S.C. § 551(13) (defining "agency action" with specific terms, such as "rule" and "order," none of which correspond to complaints filed in federal court). And plaintiffs' claim that a future enforcement action constitutes a "sanction" because it is the "imposition of penalty or fine" also fails. Pls.' Opp. 22, quoting 5 U.S.C. § 553(10)(C). The Commission cannot unilaterally impose penalties when it files complaints in district court; rather, federal judges impose penalties in final judgments only if they agree with the Commission's requests for relief. Indeed, even were such an

---

[1] On appeal, the Fifth Circuit found the EEOC guidance documents of particular significance because, unlike the Commission, "Congress did not explicitly give the EEOC substantive rulemaking authority," causing the Court to be "even charier of granting the EEOC a blank check to issue guidance backed by the threat of an enforcement action without allowing employers to protect their own rights in response." *Braidwood*, 70 F.4th at 928.

enforcement action explicitly threatened (and no enforcement action has been threatened against

LEJILEX), "action that is merely threatened"—as opposed to "concrete action[]"—is not "agency

action" for purposes of the APA. *Walmart*, 21 F.4th at 310. Finally, the reasons that the filing of an

enforcement action in district court is not agency action (*see supra* 5-7) apply all the more to an

unfiled enforcement action, especially when the Commission is not alleged to have even investigated

LEJILEX.

3. Plaintiffs' inability to point to any agency action not committed to the Commission's

discretion obviates the need for this Court to address whether that agency action must be final in

order to waive sovereign immunity. But plaintiffs are wrong that they need not make that showing

under *Alabama-Coushatta*. Pls.' Opp. 18.

When judicial review is sought pursuant to the "general provisions of the APA," and "not

pursuant to specific authorization in [a] substantive statute," there must be final agency action to

invoke the APA's sovereign immunity waiver. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990);

*see* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which

there is no other adequate remedy in a court are subject to judicial review."). "[W]hen judicial

review is sought pursuant to a statutory or non-statutory cause of action that arises *completely apart*

from the general provisions of the APA," only agency action—not final agency action—is required.

*Alabama-Coushatta*, 757 F.3d at 489 (emphasis added).

Effectively conceding that they cannot show final agency action, plaintiffs contend that they

are not proceeding under the APA. Pls.' Opp. 18, 20-21. They recognize that the Declaratory

Judgment Act (DJA) does not provide an independent cause of action, and now assert that their

DJA claim "rests" on various provisions of the federal securities laws. *Id.* at 20. But the provisions

that are cited in the complaint (Compl. ¶ 94) are not causes of action but registration requirements

for certain securities intermediaries. *See* 15 U.S.C. §§ 78e (securities exchanges), 78o(a) (broker-

dealers), 78q-1(b)(1) (clearing agencies).  The other provisions are cited only in plaintiffs' opposition and not in their complaint, and, in any event, permit the Commission—not regulated entities—to bring actions for injunctive relief in its discretion.  15 U.S.C. §§ 77t(b), 78u(d)(1)).

Plaintiffs never explain how the provisions of the federal securities laws that they identify in their opposition (Pls.' Opp. 20) provide "specific authorization" for the pre-enforcement judicial review that plaintiffs seek, particularly given that those provisions do not create a substantive cause of action for a private party to seek relief against the Commission.  *Lujan*, 497 U.S. at 882; *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) ("Where no other statute provides a private right of action, the agency action complained of must be *final* agency action.") (cleaned up); *People's Nat'l Bank v. OCC*, 362 F.3d 333, 336 (5th Cir. 2004) ("Since the relevant administrative agency statutory provision here does not directly provide for judicial review, the APA authorizes judicial review only of 'final' agency action."); *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc) ("The [statute in question] does not provide for judicial review * * * and therefore the general review provisions of the APA apply by default."); *see also* 5 U.S.C. § 704.  And regardless of plaintiffs' invocation of the federal securities laws, the complaint's sole count is a "challenge [to] the SEC's statutory authority."  Pls.' Opp. 21; *see* Compl. ¶¶ 5, 61, 64, 85-93; *see also* 5 U.S.C. § 706(2)(C) (addressing challenges to agency actions "in excess of statutory jurisdiction, authority, or limitations").

Allowing plaintiffs to evade the APA's requirements by invoking the DJA would eviscerate the APA's requirements.  *See, e.g.*, *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 (1980) (holding that pre-enforcement judicial review of an agency administrative complaint was available "only if the issuance of the complaint was 'final agency action' or otherwise was 'directly reviewable' under * * *

the APA").[2]  Even if the DJA may be used to challenge the facial validity of a law, it may not be

used to block the Commission's exercise of its statutory discretion to bring enforcement actions

through judicial review of an interpretation of a concededly valid law prior to agency action.  Were

the law otherwise, the APA's limitations on judicial review would be meaningless because a plaintiff

could simply use a cause of action provided to the agency in its organic statute to bring a DJA claim.

> **B.**     **This Court lacks jurisdiction because plaintiffs' claims are not ripe and plaintiffs lack standing.**

Ripeness and standing requirements preclude this Court from exercising jurisdiction

consistent with Article III of the Constitution.  Particularly in light of this Court's recent decision on

ripeness grounds in *Consensys Software, Inc. v. SEC*, No. 24-cv-00369 (N.D. Tex), and plaintiffs' failure

to identify final agency action, the issues presented here are unfit for judicial decision, and the

cognizable hardship to plaintiffs of forgoing judicial review does not justify judicial intervention at

this juncture.  Defs.' First Mot. 11-19; Defs.' Second Mot. 7; Defs.' Resp. 10-13.  Moreover,

plaintiffs' efforts to demonstrate standing by invoking *Bear Creek* and *Braidwood* are unavailing

because this case is different in several material respects.  Defs.' First Mot. 19-21; Defs.' Second

Mot. 7; Defs.' Resp. 13-17.

1. At this "pre-enforcement * * * action" stage, plaintiffs' claims are unfit for judicial review

because, to reiterate, they have "identified no *final* agency action."  *Walmart*, 21 F.4th at 311; *see Am.*

*Airlines, Inc. v. Herman*, 176 F.3d 283, 291 (5th Cir. 1999) ("[O]ne of the criteria for determining

whether an issue is ripe for review [is] whether the challenged agency action constitutes final agency

action within the meaning of the APA.") (cleaned up); *Texas v. United States*, 497 F.3d 491, 498 (5th

---

[2] Plaintiffs' assertion that their "claim[]" for "injunctive relief" is "covered by the waiver of sovereign immunity in 5 U.S.C. §[ ]702" (Pls.' Opp. 17) is unavailing for the same reasons that Section 702 does not waive sovereign immunity for their claim for declaratory relief.  And while plaintiffs contend that they have brought "two * * * causes of action" (Pls.' Opp. 20), their complaint asserts only one.  *See* Compl. ¶¶ 85-93.

Cir. 2007) (similar); *see also* Order at 6, *Consensys Software, Inc. v. SEC*, No. 24-cv-00369 (N.D. Tex. Sept. 19, 2024), Dkt. 57 (*Consensys* Order) (concluding that whether a claim against the Commission is fit for judicial review depends on whether it challenges "final agency action under Section 704 of the APA").[3]  To constitute final agency action under the APA, "(A) the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature * * * [a]nd (B) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 853 (5th Cir. 2022) (cleaned up); *see Consensys* Order 6; Defs.' First Mot. 8.

Plaintiffs do not dispute that the Commission has taken no action—let alone final agency action—regarding LEJILEX.  And plaintiffs do not point to Commission "guidance" that LEJILEX's planned conduct violates, much less a supposed Commission "admi[ssion]" that LEJILEX's planned conduct violates Commission "guidance." *Braidwood*, 70 F.4th at 931.  Rather, plaintiffs point to statements by the Commission's Chair, Commission enforcement actions against "other entities," and the supposed "imminent enforcement action that LEJILEX will face if it engages in the conduct at issue." Pls.' Opp. 19, 22.  For the reasons explained above, those are not agency actions. *See supra* 5-8.

But even were those agency actions, they would not be *final* agency actions because—as plaintiffs do not dispute—(1) they do not mark the consummation of the Commission's decisionmaking process and (2) they do not determine rights and obligations or create legal consequences.  A statement by the Chair is not a decision that creates obligations, and, as this Court recently explained, "[Commission] enforcement actions do not constitute final agency actions"

---

[3] Plaintiffs' effort to evade the ripeness inquiry (Pls.' Opp. 11) is unavailing.  Ripeness is a justiciability doctrine "originating in the case-or-controversy requirement of Article III." *Trump v. New York*, 592 U.S. 125, 131 (2020).  Binding precedent requires its application. *See, e.g.*, *Braidwood*, 70 F.4th at 930-32; *Walmart*, 21 F.4th at 311-13; *see also Consensys* Order 5-9.

because "'the allegations made in an enforcement suit do not impose the *kind* of legal obligations with which finality doctrine is concerned.'" *Consensys* Order 7, quoting *Dow Chem. v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987); *see also* Defs.' First Mot. 8. Thus, Commission enforcement actions—whether existent or supposedly imminent—"do not render [plaintiffs'] claims fit for judicial decision." *Consensys* Order 7; *see, e.g.*, *Hodl,* 2024 WL 3898607 at *3 (affirming determination that digital-asset-related declaratory judgment claims were not ripe because the Commission had not brought suit against the plaintiff).

Because there is no final agency action, judicial review would "improperly intrude[] into the agency's decisionmaking process." *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986), *as amended* (Sept. 9, 1986). And judicial review would necessarily depend on assumptions about future conduct by both the Commission, which has taken no position regarding LEJILEX, and LEJILEX, which is not operational, which further demonstrates that judicial intervention at this point is unwarranted. *See Braidwood*, 70 F.4th at 930 ("[I]f a claim is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe.") (cleaned up); *see also* Defs.' First Mot. 13-18.

Moreover, plaintiffs' insistence that their lawsuit presents only a legal issue ignores the scope of relief that they ask this Court to provide. Plaintiffs ask this Court to adjudicate the planned future trading of digital assets that they do not fully identify or describe on digital-asset trading platforms that they do not fully identify or describe. *See* Pls.' Opp. 12-13. As plaintiffs acknowledge, a court must analyze specific facts to determine if a digital-asset transaction implicates the federal securities laws or if an intermediary is operating as an exchange, a broker, and/or a clearing agency under those laws. Defs.' First Mot. 15-16. That LEJILEX "will permit transactions only in digital assets that entail no ongoing commitments or obligations of any kind" (Pls.' Opp. 13 (cleaned up)) is just one predictive assertion about one of the digital-asset trading platforms for which plaintiffs seek

relief.  At a minimum, "further factual development" is required to determine the scope of the digital-asset activity for which plaintiffs seek relief.  *Braidwood*, 70 F.4th at 930.

Indeed, plaintiffs do not even identify the other digital-asset trading platforms for which they seek relief.  *See* Pls.' Opp. 12-13, 31.  That stands in sharp contrast to *Braidwood*, in which the Fifth Circuit concluded that "no further factual investigation is required to determine whether [the Religious Freedom Restoration Act of 1993] supersedes Title VII's requirements as applied to [the plaintiffs'] *specific* employment policies."  70 F.4th at 931 (emphasis added).  And while plaintiffs compare their requests for relief to Commission digital-asset enforcement actions (Pls.' Opp. 12), in those enforcement actions the Commission alleges violations of law by specific defendants based on specific transactions in digital assets being offered and sold as securities.  *See, e.g.*, Compl. ¶¶ 228-445, *SEC v. Payward, Inc.*, No. 23-cv-06003 (N.D. Cal. filed Nov. 20, 2023); Compl. ¶¶ 114-305, *SEC v. Coinbase, Inc.*, No. 23-cv-04738 (S.D.N.Y. filed June 6, 2023).

Plaintiffs are left to argue that their claims are fit for judicial review because they "have alleged all the facts necessary to entitle them to relief if their view of the law is right."  Pls.' Opp. 14 (cleaned up).  But that is not the test for ripeness.  *See Walmart*, 21 F.4th at 311 (identifying factors relevant to whether claims are fit for judicial review at the "pre-enforcement * * * action" stage).  And to the extent plaintiffs have "carved out" questions that could bear on liability in potential future enforcement actions, the judicial power may be invoked only to "resolve [an] entire case or controversy," not to "gain a litigation advantage by obtaining an advance ruling" on discrete legal issues.  *Calderon v. Ashmus*, 523 U.S. 740, 746-47 (1998); *see* Defs.' First Mot. 17.

2.  Because their claims are unfit for judicial review, plaintiffs must demonstrate that "postponing review [will] impose a hardship * * * that is immediate, direct, and significant."  *Cronin v. FAA*, 73 F.3d 1126, 1133 (D.C. Cir. 1996) (cleaned up).  They fail to do so.  Defs.' First Mot. 18-19; Defs.' Second Mot. 7; Defs.' Resp. 11-13.  In claiming otherwise, plaintiffs, relying on *Braidwood*,

argue that the "*in terrorem* effects from the SEC's guidance and a credible prosecution risk are sufficient." Pls.' Opp. 15 (cleaned up). But, unlike the EEOC in *Braidwood*, the Commission has not issued guidance. *See* 70 F.4th at 931 ("No party disputes that under current EEOC guidance, neither [plaintiff] can fire any employee for nonconformance with the [plaintiff's] challenged religious beliefs.").

Another point of distinction from *Braidwood* is that plaintiffs here face no credible prosecution risk.[4] *See Consumer Data Indus. Ass'n v. Texas ex rel. Paxton*, No. 21-51038, 2023 WL 4744918, at *7 (5th Cir. July 25, 2023) ("The ripeness inquiry for an injury that is predicated on threat of litigation focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention.") (cleaned up). In *Braidwood*, a credible prosecution risk existed because the plaintiffs "admit[ted] they [were] breaking EEOC guidance, which the EEOC [did] not seriously contest." 70 F.4th at 926. Here, without any such clear violation of any such Commission guidance, the supposed injury is not "certainly impending." *Id.* at 932 (cleaned up); *see, e.g.*, *Saline Parents v. Garland*, 88 F.4th 298, 306-08 (D.C. Cir. 2023) (finding no "immediate and significant hardship sufficient to outweigh institutional interests in the deferral of review" where "[w]hether [a]ppellants will ever become the subjects of an * * * investigation or enforcement proceeding remains to be seen"), *petition for cert. filed*, No. 23-1135 (U.S. Apr. 15, 2024).

Moreover, in *Braidwood*, forgoing judicial review would have potentially resulted in hardship of constitutional dimensions because the plaintiffs' religious beliefs and practices were implicated. *See* 70 F.4th at 932 n.33; *see also Bear Creek*, 571 F. Supp. 3d at 598 ("[D]enying prompt judicial review would impose a substantial hardship on Plaintiffs, forcing them to choose between violating Title VII on one hand, and violating their religious convictions on the other."). Even if LEJILEX's

---

[4] In *Braidwood*, the Fifth Circuit specified that it was not opining on whether the plaintiffs would have established hardship without a credible prosecution risk. 70 F.4th at 931 n.32.

alleged fear of enforcement causes it to forgo or delay opening its planned trading platform—or to register under the federal securities laws—it does not cause LEJILEX to "violat[e] * * * closely held religious beliefs." *Braidwood,* 70 F.4th at 932 n.33.

Finally, plaintiffs do not dispute that they can raise all of their arguments in any eventual enforcement action—an action that may never happen—which reduces any hardship that plaintiffs would face without judicial review at this time. Defs.' First Mot. 18-19; Defs.' Resp. 12. As this Court noted in *Consensys*, any future enforcement action (should one ever occur) would provide the defendant "'with an avenue to test its theories,' further mitigating [its] hardship." *Consensys* Order at 8, quoting *Walmart*, 21 F.4th at 313.

2. For similar reasons, plaintiffs have not shown standing because they fail to allege a cognizable injury. Defs.' First Mot. 19-21; Defs.' Second Mot. 7; Defs.' Resp. 13-17. In arguing otherwise, plaintiffs rely on *Bear Creek* and *Braidwood*, but their arguments are unavailing. *See* Pls.' Opp. 6-11.

The Fifth Circuit explained in *Braidwood* that "a plaintiff can demonstrate a cognizable injury in a pre-enforcement challenge only if it establishes that (1) it has an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and (2) there exists a credible threat of prosecution thereunder." 70 F.4th at 924-25 (cleaned up); *see also Paxton v. Dettelbach*, 105 F.4th 708, 711 (5th Cir. 2024) (similar). In *Braidwood* "[p]rong one [was] not in question." 70 F.4th at 925 n.15. But here plaintiffs have alleged an intention to operate a digital-asset trading platform, a course of conduct that is not even arguably affected with a constitutional interest, much less one of core constitutional rights and liberties. *See, e.g.*, *Blankenship v. Buenger*, 653 F. App'x 330, 343 (5th Cir. 2016) ("[S]tanding requirements in the First Amendment context are relaxed.") (cleaned up). Moreover, plaintiffs do not challenge any statute, rule, or guidance but instead premise their standing on the Commission's claims in other federal courts that other entities

have violated the federal securities laws based on specific digital-asset transactions.  Defs.' First Mot.
20.

  The second cognizable injury prong also goes against plaintiffs here.  In *Braidwood*, the Fifth
Circuit explained that "the EEOC's guidance documents and its previous lawsuit against [another]
religious employer * * * *conjointly* present[ed] a credible threat" of an enforcement action against the
religious employer plaintiffs because their employment policies "facially violate[d] the EEOC's
guidance."  70 F.4th at 925 (emphasis added).  Here, while plaintiffs point to Commission
enforcement actions against other entities, there is no conjoint credible threat, much less to
constitutional rights, and plaintiffs do not identify any Commission rules or guidance (only
statements by the Chair).  *See supra* 5-8; *see also Braidwood*, 70 F.4th at 928 (acknowledging that the
Supreme Court has "treated the threat of future enforcement as case-and fact-specific,
understanding that evaluating threats against our most cherished rights cannot be neatly reduced to a
rigid formula" and that "[d]ifferent factors are weighed accordingly per the case-specific facts").
Indeed, because "standing doctrine is, in many ways, intended to avoid judicial resolution of cases in
which prosecutorial discretion is an alternate solution," "[n]ot every case in which a governmental
authority has so far chosen not to prosecute can overcome the standing barrier."  *Braidwood*, 70 F.4th
at 929 n.27; *see also Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1313-14 (D.C. Cir. 2010)
("[M]erely foreseeable future litigation resulting from a statutory interpretation that an agency has
adopted in an adjudication is * * * without more * * * too speculative to satisfy Article III's injury-in-
fact requirement," as opposed to when "the prospect of impending harm [is] effectively certain.").
And to the extent plaintiffs try to paper over what distinguishes this case from *Bear Creek* and
*Braidwood* with the claim that they really do fear enforcement actions, their "subjective fears" "cannot
possibly serve as the basis for standing."  *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 701 (5th

Cir. 2000); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of * * * injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").

Finally, as the Fifth Circuit recognized in *Braidwood*, "challenges in a pre-enforcement posture, if applied inappositely, likely create a patchwork of exceptions and poorly reasoned legal standards covering a fuzzily defined range of enforcement actions that do not appear imminent." 70 F.4th at 929 (cleaned up). In *Braidwood*, that proved no barrier to standing because the Fifth Circuit knew "what the EEOC says violates its guidance and the law" and "what [the plaintiffs] exact policies are" and had "admissions from the EEOC that [the plaintiffs'] current practices violate Title VII." *Id.* But here, for the reasons discussed above, "declaratory relief [would be] too speculative because, to rule on the matter properly, any decision would be overly reliant on information not before the court." *Id.*; *see supra* 12-13.

### C.   This Court lacks jurisdiction because this lawsuit is an improper programmatic challenge.

This lawsuit, which is an attempt to the place the entire "digital asset industry" beyond the reach of the federal securities laws, constitutes the type of programmatic challenge over which federal courts lack jurisdiction. Defs.' First Mot. 21-25; Defs.' Second Mot. 7; Defs.' Resp. 17-18. In their opposition, plaintiffs battle their own complaint, presenting arguments that conflict with the scope of the relief that they have asked this Court to provide. *See* Pls.' Opp. 28-32.

Trying to have it both ways, plaintiffs now argue that they "are challenging the specific and imminent threat that the SEC will bring an enforcement action against LEJILEX when LEJILEX launches the Legit.Exchange, and/or against other CFAT members engaged in analogous conduct." *Id.* at 28. But the "particular universe of digital asset transactions" to which they have supposedly "confined their claims" (*id.* at 30) is neither limited to certain trading platforms nor to certain digital assets. *See* Compl. ¶ 94 ("Declare that secondary-market sales of digital assets *like the ones* that LEJILEX intends to facilitate through the Legit.Exchange are not sales of securities as defined by

the Exchange Act * * * and the Securities Act.") (emphasis added); *see also* Pls.' Opp. 35 (arguing that "the bare purchase[s] and sale[s] of digital assets that [do not entail ongoing contractual obligations to investors] are not securities transactions"). That is not a "discrete challenge to a particular threatened agency action" (Pls.' Opp. 29), but rather, as the complaint expressly acknowledges, an attempt to "free [plaintiffs] and the rest of the digital asset industry from the * * * threat of * * * SEC enforcement actions based on the SEC's * * * view of its regulatory authority" (Compl. ¶ 5). Plaintiffs' suit is not at all like the situation in *Bear Creek* and *Braidwood* where the plaintiffs sought adjudication of the legality of "specific [employment] policies," and did so by challenging a particular agency enforcement action that was "certainly impending." *Braidwood*, 70 F.4th at 931-32 (cleaned up).

Plaintiffs' contention that finding their lawsuit to be a programmatic challenge would "convert every suit brought by an association seeking declaratory or injunctive relief * * * into an improper programmatic challenge" misses the point. Pls.' Opp. 31 (cleaned up). The far-reaching relief that plaintiffs seek is not confined to CFAT members—by design, it purports to reach *all* secondary-market offers and sales of digital assets that do not involve ongoing contractual obligations to investors, regardless of the particular asset or the particular trading platform. *See id.* at 30. The presence of CFAT as a plaintiff—alongside LEJILEX—is not what renders this lawsuit an improper programmatic challenge; it is the request that this Court go far beyond its Article III boundaries in imposing broad relief regarding an entire category of assets in the absence of any final agency action—or any agency action at all—"that has an actual or immediately threatened effect." *Lujan*, 497 U.S. at 894.

In fact, plaintiffs do not dispute that the relief sought could interfere with future and current cases pending in other federal courts or that principles of comity require this Court to avoid such potential interference when possible. Defs.' First Mot. 24; Defs.' Resp. 18; *see* Pls.' Opp. 31-32.

Plaintiffs' only response is to claim that any "remedy in this case" can be "tailor[ed] * * * to accommodate those interests," and to carve out pending Commission enforcement actions from the scope of the relief sought. Pls.' Opp. 31-32 & n.5. But that response just confirms that plaintiffs have launched a programmatic challenge that is beyond this Court's jurisdiction, and it is not this Court's job to rejigger the complaint in an attempt to fix that fatal flaw. Moreover, plaintiffs' proposed fix does not work because the complaint would still seek relief for nearly all secondary-market offers and sales of digital assets that do not involve ongoing contractual obligations to investors, regardless of the particular asset or the particular trading platform.

Plaintiffs' opposition cannot right-size their overly broad complaint. The complaint does not challenge "an identifiable action or event," *Lujan*, 497 U.S. at 899, much less final agency action (*see supra* 10-12), and instead seeks to challenge the entirety of the Commission's digital-asset enforcement program. This Court should not—and indeed cannot—wade into these waters because "[t]he case-by-case approach * * * is the traditional, and remains the normal, mode of operation of the courts." *Lujan*, 497 U.S. at 894.

## II.     The complaint fails to state a claim authorizing the requested relief.

Even beyond the complaint's jurisdictional flaws, this Court cannot grant the requested relief because it does not correspond to a cognizable underlying cause of action, and plaintiffs have not alleged—and could not possibly allege—a plausible claim that digital-asset transactions can never be securities transactions absent ongoing contractual obligations to investors. Defs.' Second Mot. 8-22; *see* Defs.' Resp. 19-34.

### A.     The complaint fails to allege a cause of action.

Plaintiffs concede that the DJA "does not create its own cause of action" and that "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action." Pls.' Opp. 24 (cleaned up). Plaintiffs claim that they seek to

adjudicate an "SEC * * * cause of action to sue Plaintiffs for purported violations of the federal securities laws." *Id.* at 25.  But that is not what the complaint actually asks this Court to adjudicate. Rather, the complaint, which consists mainly of a wide-ranging commentary on the federal securities laws and digital assets, seeks to litigate the Commission's general approach to enforcing the securities laws in connection with digital assets.  Defs.' Second Mot. 8-11.  Plaintiffs' claim that "[i]t is hard to imagine declaratory relief more narrowly tailored" (Pls.' Opp. 26) is implausible given the breadth of the relief they seek.  The Commission's enforcement actions, for example, are more narrowly tailored as they allege that specific securities transactions involving specific digital assets violated the securities laws in specific ways that justify the award of specific remedies.  Defs.' Second Mot. 9-10.  Plaintiffs' request for declaratory relief for *all* secondary-market offers and sales of digital assets that do not involve ongoing contractual commitments to investors, regardless of the particular asset or the particular trading platform, is different in kind.  And plaintiffs do not dispute that a DJA claim that fails to seek relief corresponding to an underlying cause of action also fails to state a claim upon which relief may be granted.  *Id.* at 11.

Plaintiffs contend that the complaint asserts a separate "cause of action to enjoin unlawful executive action."  Pls.' Opp. 25 (cleaned up).  But the complaint asserts only a single DJA cause of action, and any requested injunctive relief is pursuant to that cause of action.  *See* Compl. ¶¶ 85-93; *supra* 10 n.2.  In any event, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations," "[c]ourts of equity can no more disregard statutory * * * requirements and provisions than can courts of law," "and [plaintiffs] cannot, by invoking [courts'] equitable powers, circumvent Congress's [limitations]."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28 (2015) (cleaned up); *United States v. Texas*, 97 F.4th 268, 276 (5th Cir. 2024) (similar).  "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts."  *Franklin v. Massachusetts*,

505 U.S. 788, 796 (1992).  And plaintiffs cannot avoid statutory limitations—including the APA's requirements and its express exception for agency action committed to agency discretion by law—by recasting their claim for injunctive relief as arising under this Court's inherent equitable authority. Were that so, the APA's limitations on judicial review would be rendered meaningless.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996) ("Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary.").

### B.  The complaint does not allege facts demonstrating, as a matter of law, that digital-asset transactions cannot be securities transactions absent ongoing contractual obligations to investors.

The premise of the complaint is that a digital-asset transaction that does not include an ongoing contractual obligation to the investor can never be a securities transaction.  That is incorrect as a matter of law, and the complaint thus fails to state a claim.  Defs.' Second Mot. 11-22; *see* Defs.' Resp. 19-34.

Plaintiffs do not dispute that whether a digital-asset transaction is a securities transaction depends on its facts and circumstances.  Defs.' Second Mot. 12-17.  And the complaint fails to allege the facts and circumstances of the digital-asset transactions for which plaintiffs seek relief.  *Id.* at 17-19.  Plaintiffs claim that they need not provide additional factual allegations because they "identified [certain] digital assets" and what determines whether a digital-asset transaction is a securities transaction is the "nature of the asset[]."  Pls.' Opp. 44.  But whether a digital-asset transaction is a securities transaction is not determined by the nature of the asset.  The question is whether, given the totality of the circumstances and the economic reality surrounding the offer or sale of the asset, what was offered or sold was an investment contract.  Defs.' Second Mot. 12-17.  That the asset is a citrus grove tract, for example, does not determine if what was offered and sold is an investment contract.

In place of necessary factual allegations, plaintiffs repeat the complaint's legal conclusions that the digital-asset transactions that will occur on the Legit.Exchange will not include ongoing contractual obligations to investors. Pls.' Opp. 36. But such legal conclusions are insufficient to state a claim. Defs.' Second Mot. 18. And plaintiffs fail to offer any convincing response to support their incorrect assertion that a digital-asset transaction that does not include an ongoing contractual obligation to the investor can never be a securities transaction. *See* Defs.' Second Mot. 19-22; Defs.' Resp. 19-39.

The Supreme Court has not required an ongoing contractual obligation to the investor as a predicate for finding an investment contract. Defs.' Resp. 19-22. And *Howey*'s test for an investment contract confirms that no ongoing contractual obligation is required. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). While an ongoing contractual obligation could give rise to an investor's reasonable expectations of profits from the efforts of others, such expectations do not *require* an ongoing contractual obligation. In *Howey* itself, the Court found that expectations of profits came not from the contracts at issue but from what was "represented" to investors, including via "advertising mentions" and "sales talk[s]." *Id.* at 296-97.

Plaintiffs argue that *Howey* demonstrates that an ongoing contractual obligation is required because the Court found that "the promoters did not enter into investment contracts with purchasers who declined the service contract." Pls.' Opp. 41 (cleaned up). But if an investment contract requires an ongoing contractual obligation, it would also require an executed contract. Yet, the federal securities laws regulate not only *sales* of securities but also *offers* to sell securities. Defs.' Resp. 25-26. Moreover, plaintiffs' reading of *Howey* ignores the Court's explanation that the written contracts only "evidenced" the relationships and that the legal transfer of rights was "purely incidental," as well as the Court's establishment of a test for investment contracts that makes no mention of any such ongoing contractual obligation. 328 U.S. at 298-300.

Plaintiffs' attempts to read an ongoing contractual obligation requirement into *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344 (1943), are equally unavailing. Plaintiffs argue that in *Joiner* the Court found that it was unnecessary to determine whether there was an *enforceable* ongoing contractual obligation because state law remedies were irrelevant to the existence of an investment contract. Pls.' Opp. 41-42. But, in fact, the Court found that it was unnecessary to determine whether there was a "legal right," *i.e.*, an ongoing contractual obligation. *Joiner*, 320 U.S. at 349. And, in any event, the Court looked to representations both inside and outside of a formal contract to determine whether, given the facts and circumstances, an investment contract existed. Defs.' Resp. 19-21, 34.

In the digital-asset context in particular, courts have rejected attempts to impose the sort of ongoing contractual obligation requirement asserted by plaintiffs, concluding that it "cannot be fairly read into the *Howey* test," *SEC v. Coinbase, Inc.*, No. 23-cv-4738, 2024 WL 1304037, at *24 (S.D.N.Y. Mar. 27, 2024), and is "foreclosed by Supreme Court * * * precedent," *SEC v. Binance Holdings Ltd.*, No. 23-cv-1599, 2024 WL 3225974, at *8 (D.D.C. June 28, 2024). *See* Defs.' Resp. 22-23. Plaintiffs fail to identify a single case supporting their argument. And unable to meaningfully distinguish any of the six such cases cited by defendants, plaintiffs are left to assert that those cases are "mistaken" because they "eviscerate" the ongoing contractual obligation requirement proffered by plaintiffs. Pls.' Opp. 42. But it is plaintiffs, not all courts to have addressed the question, that are mistaken.

Finally, plaintiffs' resort to the major questions doctrine is unavailing. *Id.* at 38. To begin with, plaintiffs fail to identify a single instance of the doctrine being applied to government enforcement of statutory requirements—let alone hypothetical enforcement of statutory requirements in a future action that may never occur. They cite cases involve rulemaking and other types of legislative agency actions, but courts that have addressed the issue have correctly declined to apply the major questions doctrine to efforts by agencies to enforce Congressional enactments.

Defs.' Resp. 40-42.  Indeed, several courts have rejected the application of the doctrine in

Commission digital-asset enforcement actions (*id.* at 41-42), and plaintiffs never explain why a

possible future enforcement action against LEJILEX (or another CFAT member) would present

circumstances warranting its application (*see id.* at 42-46).

### III.    This Court should exercise its discretion to dismiss this lawsuit.

Even if plaintiffs' request for declaratory relief were justiciable and this Court had authority

to grant the requested relief, this Court should exercise its discretion to dismiss the complaint.

Defs.' Second Mot. 22-24.

Plaintiffs do not dispute that this Court may exercise its discretion to dismiss a DJA claim

but assert that such a dismissal "would extend only to Plaintiffs' claims for declaratory relief" and

not plaintiffs' supposed "traditional equitable cause of action to enjoin unlawful executive action."

Pls.' Opp. 32 (cleaned up).  But the complaint's sole count is brought under the DJA.  *See* Compl. ¶¶

85-93; *supra* 10 n.2, 20.  And, as discussed above, plaintiffs cannot avoid statutory limitations—the

APA's express requirements—by recasting their claim for injunctive relief as arising under this

Court's inherent equitable authority.  *See supra* 20-21.

To reiterate, plaintiffs do not contend that the Commission has taken any investigative or

enforcement steps regarding LEJILEX.  Consequently, this suit would effectively require the

Commission to bring a case against LEJILEX—and other unspecified CFAT members—from its

position as a defendant.  In addition to being inefficient, that would improperly circumvent the

Commission's investigative and enforcement processes, which are not alleged to have even

commenced.  *See, e.g.*, *Agri-Trans Corp. v. Gladders Barge Line, Inc.*, 721 F.2d 1005, 1011 (5th Cir. 1983)

("A declaratory judgment action should not be used to circumvent the usual progression of

administrative determination and judicial review."); Defs.' Second Mot. 23-24.  Plaintiffs fail to

identify a single case in which a DJA proceeded based on the supposed threat of a potential future

enforcement action that was so many steps from fruition and divorced from any reviewable agency action.

Finally, plaintiffs do not dispute that allowing this case to go forward would risk entanglement with Commission enforcement actions pending in other federal courts. Defs.' Second Mot. 24. Plaintiffs' proposed solution is again to "cabin[]" any remedies granted by this Court (Pls.' Opp. 34), but that would not alleviate the risk of interference, duplication, and inconsistent results.

## IV.   Alternatively, this Court should grant summary judgment for defendants.

To the extent this Court determines that it has subject-matter jurisdiction and that the complaint states a claim, and then exercises its discretion to address the request for declaratory relief, it should grant summary judgment in defendants' favor. Though whether a digital-asset transaction is a securities transaction turns on its fact and circumstances, plaintiffs have offered this Court only two short declarations—both of which have few relevant facts and are unsupported by any evidence—in support of their motion for summary judgment and in opposition to defendants' motion for summary judgment. Without any law or any facts on their side, plaintiffs have not demonstrated an entitlement to relief under the DJA because they have not proven—and cannot prove—that as a matter of law a digital-asset transaction cannot be a securities transaction under *Howey*'s "investment contract" test without an ongoing contractual obligation to the investor. Defs.' Second Mot. 11-22; Defs.' Resp. 19-39.

## CONCLUSION

The complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim. Alternatively, summary judgment should be granted in defendants' favor.

Dated: October 2, 2024

Respectfully submitted,

/s/ *Jason J. Rose*
Jason J. Rose
Texas Bar No. 24007946
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1408 (phone)
(817) 978-4927 (facsimile)
rosej@sec.gov


*Counsel for Defendants*

Jeffrey A. Berger (*pro hac vice*)
Illinois Bar No. 6282511
Ezekiel L. Hill (*pro hac vice*)
D.C. Bar No. 1684647
David D. Lisitza (*pro hac vice*)
California Bar No. 225824
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-7724 (Hill)
bergerje@sec.gov
hillez@sec.gov
lisitzad@sec.gov

**CERTIFICATE OF SERVICE**

I affirm that on October 2, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Fort Worth Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jason J. Rose*
Jason J. Rose